Cady v. McDowell.

---

JOHN P. CADY, Appellant, *v.* JOHN McDOWELL, Respondent.

(GENERAL TERM, SEVENTH DISTRICT, SEPTEMBER, 1869.)

Plaintiff, who was a housekeeper, but not accustomed to take persons to board, upon the defendant's application, received the latter and his family, into his house, for an indefinite time, with a general understanding that he (plaintiff) was to be compensated for board and accommodations. *Held*, plaintiff was not a boarding-housekeeper within the meaning of the Laws of 1860 (chap. 446, p. 771), allowing a detention of the baggage and effects of boarders, for board due.

The legal meaning of the term boarding-housekeeper explained. Per JOHNSON, J.

Cady *v.* McDowell.

APPEAL from a judgment upon the verdict of a jury. The plaintiff proved upon the trial the facts, as stated in the opinion, and the court directed a verdict for the plaintiff, to which the defendant duly excepted, &c., &c.

*W. E. Hughitt*, for the appellant.

*Davie & Payne*, for the respondent.

Present—E. D. SMITH, DWIGHT and JOHNSON, JJ.

By the Court—JOHNSON, J. The only question in this case, is, whether the defendant at the time the alleged cause of action arose, was the keeper of a boarding-house, within the meaning and intention of the act of the legislature of April 16, 1860. (4 Stat. at large, 680.) If he was such, he was authorized by that act to detain the property and effects in question, for the amount due him for the plaintiff's board. There is no dispute about the facts. The defendant was at the time the keeper of a grocery, and was also a housekeeper. The plaintiff was the brother of the defendant's wife, and had four children. He requested the defendant, to let him come to his house with his children, and live for a time, until he could arrange his affairs, which request was granted ; and he went there and lived there with his children about five or six months. No arrangement was made in regard to the time the plaintiff was to remain or as to the price for the board, though it appears, that it was understood between the parties that compensation was to be made. The defendant at the time the plaintiff came there, had kept house only a few months, and had never at any time before or since taken or had any other boarder. Upon this state of facts, the question is fairly presented whether the defendant is within the purview of the statute. The act is entitled " an act for the protection of boarding-housekeepers." Who is a boarding-housekeeper, within the meaning and intention of this act ? Is it every house-keeper who in a single instance takes an individual to board for a limited time, by way of accommodation, though for compensa-

tion, or who occasionally takes one or more persons in that way and in no other, but who does not make it his regular business or calling; or is it a person who belongs to a well understood class of persons, which makes the keeping of boarders a busi ness or calling, in whole or in part? I am clearly of the opinion, that it is the latter class only, that the statute was designed to protect, or that comes within its terms and mean ing. A boarding-house is not in common parlance, or in legal meaning, every private house where one or more boarders are kept occasionally only, and upon special consid- erations. But it is a *quasi* public house, where boarders are generally and habitually kept, and which is held out and known, as a place of entertainment of that kind. I do not find that this precise question has ever before arisen, so as to require judicial determination. But upon a question quite analogous, it has been held, that a person who does not hold himself out as an innkeeper, but who entertains travelers occasionally for pay, is not an innkeeper, nor liable as such. (*Lyon* v. *Smith* 1 Morris, 184.) It is, I apprehend, within the observation, if not the experience of almost every one, that persons frequently board with friends, and relatives, and even strangers, who are not supposed or understood to keep boarding-houses. It is only the keepers of boarding-houses as such, that come within this statute. The distinction between an inn and a boarding-house has been held to be, that in a boarding-house, the guest is under an express con- tract, at a certain rate, for a certain period of time, while at an inn the guest being on his way, is entertained from day to day, according to his business, upon an implied contract. The innkeeper is bound to receive every one who applies, if in a fit condition to be received, while the boarding-housekeeper is not bound to receive any one, except upon special contract. (*Willard* v. *Reinhardt*, 2 E. D. Smith, 148; 2 Kent's Com., 595; *Thompson* v. *Lacy*, 3 Barn. & Ald., 283; *Holder* v. *Soulby*, 8 J. Scott, N. S., 254; *Dansey* v. *Richardson*, 3 Ell. & Bla., 144.)

A boarding-house is as well known, and as distinguishable

from other houses, in every city and village in the country, as an inn or a tavern. It is a house where the business of keeping boarders generally is carried on, and which is held out, by the owner or keeper, as a place where boarders are kept. That this is the legislative idea, appears plainly by the act of the legislature, passed April 23, 1867. (Chap. 677, Sess. Laws of 1867.) This act is entitled : " An act to prevent fraud and fraudulent practices upon, or by hotel-keepers and inn-keepers." By § 2 of this act, " every keeper of a hotel, restaurant, boarding-house, or inn," is required to post " in a public and conspicuous place, in the office or public room, and in every bed-room, in said house, a printed copy of this act, and a statement of the charge or rate of charges, by the day, and for meals or items furnished, and for lodging." This section also provides that for any violation of the section, or of any provision thereof, the offender shall forfeit to the injured party three times the amount charged, and shall not be entitled to receive any compensation for the entertainment furnished. This shows plainly, as I think, the kind of house the legislature had in view. It was a sort of public house, partaking in some degree of the character of an inn, or restaurant, but differing from either, where the business of entertaining persons for certain periods, and at fixed or agreed prices, was carried on. Certainly, the legislature could not have intended that every private housekeeper, who might occasionally keep one or more boarders, but who did not make it a business, should post up copies of this act, in the different rooms of his house, and be subjected to the penalties prescribed, in case of his neglect to do so. What was decided in *Jones* v. *Morill* (42 Barb., 623,) cited by the defendant's counsel, was, that the act of 1860 gave to boarding-housekeepers, the same rights which the keepers of inns and taverns had, in respect to their guests, at common law. This was clearly right. The defendant here was a grocer, and, in no legal sense, a boarding-housekeeper. He was a mere private housekeeper, entertaining a boarder, who was a relative, for hire, in a single instance, and does not fall within the letter or spirit of the

act. Consequently he had no right to detain the goods, and the action was well brought, and should have been sustained. A new trial must, therefore, be granted, with costs to abide the event.

New trial granted.