50   483
81   558,

M. E. AND A. G. ROCO v. M. M. GREEN, ADM'R.

1. HOMESTEAD—FAMILY.—From the authorities, the following rules to determine when the relations of a family as contemplated by law exist, are deduced :

     1. It is one of social status, not of mere contract.

     2. Legal or moral obligation on the head to support the other members.

     3. Corresponding state of dependence on the part of other members for their support.

2. FAMILY RELATION, HOW BROKEN.—The law contemplates that as the older members of the family grow up and marry, or move off and leave the paternal roof, the legal relation of a family as it had

formerly existed, ·as to such members so leaving, ceases, and other
relations and families are formed.

3. FAMILY—MARRIED DAUGHTER.—Under the probate law of 1870, a
married daughter, with her children, residing with her mother, formed
no constituent member of the family such as to entitle her and her
children to the homestead upon the death of her mother.

APPEAL from Hopkins.   Tried below before the Hon. Green
J. Clark.

The facts are fully stated in the opinion.

C. Payne and J. & B. Putnam, for appellants.—The appel-
lants complain of the ruling of the court in sustaining a general
demurrer to their original and amended petitions.  Taking all
the allegations in plaintiffs' petitions, original and amended,
to be true, it is believed that the court should have overruled
the demurrer and permitted plaintiffs to go to trial.

Plaintiff Mrs. M. E. Roco, formerly Mrs. Brown, and the
daughter of Mrs. Lucy A. Green, joined by her husband, A.
G. Roco, for herself and minor children, the grandchildren
of said Lucy, instituted this suit to have the homestead men-
tioned in plaintiffs' petition stricken from the inventory of
the property of the estate of the said Lucy.

At the time of Mrs. Green's death, as alleged in plaintiffs'
petition, to wit, the 4th of June, 1874, M. E. Roco was a
widow, living with her mother, the said Lucy, when the lat-
ter departed this life.   After the death of the said Lucy,
M. E. Roco, then Brown, intermarried with her present hus-
band, A. G. Roco, on April 1, 1875.   After the death of her
former husband, William G. Brown, the plaintiff, then M. E.
Brown, having no homestead, returned with her children to
the home of her mother, at her request, and all agreed to
live together as one family.

In this condition they were when Mrs. Green died and left
Mrs. Brown and her children in possession of the said home-
stead.

Were Mrs. Brown and her children constituents of the
family at the time of the death of Mrs. Green?

In Burns *v.* Jones, 37 Tex., 51, the court says: "It is very true that the Constitution prohibits the sale of the homestead of the family; but when no unmarried or minor children remained — no wards, no grandchildren or apprentices, nor, indeed, any member of the family of S. H. Doxey— this property was no longer the homestead of the family." This opinion goes on to say: "We will not say that orphaned grandchildren living with their grandparents at the time of their decease may not be entitled to take a homestead right."

In Hoffman *v.* Neuhaus, 30 Tex., 636, the court says: "As long as there is a family having a head, and as long as that head of a family chooses to occupy the homestead, so long it cannot be interfered with for any purpose."

In what are called the Homestead Cases, 31 Tex., 680, the court asks this question: "What constitutes a family?" After quoting from lexicographers, the opinion goes on to say: "It [meaning the word family] was most certainly used in its generic sense, embracing a household composed of parents and children, or other relatives, or domestics and servants. In short, every collective body of persons living together within the same curtilage, subsisting in common, directing their attention to a common object: the promotion of their mutual interests and social happiness."

Mrs. Lucy A. Green died in 1874, as alleged in plaintiffs' petition. The statute of 1870, under which she died, reads as follows: "The property reserved from forced sale by the Constitution and laws of this State, or its value if there be no such property, does not form any part of the estate of a deceased person where a constituent of the family survives." (Paschal's Dig., art. 5487.)

Then this homestead was no part of the estate of Mrs. Green at the time of her death, was not subject to administration as such if there was a constituent of the family left, but was to be dealt with and controlled by the laws regulating homesteads. This property was the homestead of some

person, if any had the necessary qualifications under the law to take it.

The family of Mrs. Green, at the time of her death, was composed of her widowed daughter and her minor children, they being the daughter and grandchildren of the deceased. Mrs. Brown was a child and heir at law of the deceased. She and her children were left in exclusive possession of the homestead.

Then what right had the administrator of Mrs. Green, in the face of the prohibition of the law of 1870, to inventory that property for any purpose as part of the estate of Mrs. Green?

*L. D. King,* for appellee.

*Jones & Henry* and *Payne & Putnam,* for appellants, filed an additional brief.—At the Tyler Term of the Supreme Court, 1877, this case was referred back to counsel by the court for reargument, and the following questions suggested:

"1st. Was Mrs. Roco the head of a family herself; and if so, can there be two heads of families, other than husband and wife, one to take the homestead after the other?

"2d. When a daughter leaves the home of the parents, and remains and establishes a home separately, is not the unity of the family, as to her, broken; and if so, can it be renewed by a return to the old homestead?

"3d. Where is the point of limitation among the kindred of the deceased who were living with her; and, upon principle, can it be extended beyond the children, natural or adopted, for which she is bound by law to provide, under the law as it stood in 1874, when Mrs. Green died?

"4th. The case not having been decided by our decisions, what analogy is to be found in the decisions of other States or countries?"

In answer to the first question, we submit that there might be two heads of families on the homestead, living together,

other than husband and wife, one to take and hold the homestead after decease of the other, in case of the two families being tenants in common. The tenants in common would be seized of the premises *per my et per tout,* and the husband of the one tenant dying, his widow and the other tenant would occupy to each other the relation of tenants in common, and this seizin of the premises would be the same as in the former instance—*per my et per tout;* and one of the last two tenants in common dying, the remaining tenant in common would hold the entire premises, not to exceed two hundred acres, as his homestead. That a tenant in common has an interest which will support the exemption of a homestead, see Tarrant *v.* Swain, Kansas Rep., 1875, reported in 1 Law and Equity Reporter, 9.

In this case the property in question was, in legal contemplation, the community property of Mrs. Lucy A. Green and her deceased husband. Mrs. M. E. Roco is the daughter of Mrs. Green and her deceased husband, and, so far as the record discloses, their only heir. She was, therefore, entitled to the undivided half interest of her father in the land constituting the homestead, and although when she married and left the paternal roof she may have forfeited her interest in the paternal homestead, yet when she returned and settled upon the paternal homestead with her children and her mother, her father and her husband being dead, she and her mother, (Mrs. Green,) being each entitled to an undivided half interest in the homestead property, became seized of it as tenants in common *per my et per tout,* and it became the homestead of each family; and on the death of the mother (Mrs. Green) she (Mrs. M. E. Roco) became entitled to the entire homestead right,—not as a constituent member of her mother's family, but in her own right as the surviving tenant in common. We think this view is sustained by the Kansas case above quoted.

As to the remaining questions, except in so far as they have already been answered in our answer to the first ques-

tion, we think it unnecessary to say anything, as we have been unable to find any authorities bearing directly upon them.

BONNER, ASSOCIATE JUSTICE.—This is a suit by appellant, M. E. Roco, joined by her husband, A. G. Roco, as plaintiffs, against M. M. Green, administrator of the estate of Lucy A. Green, deceased, to have stricken from his inventory the homestead of which she died seized and possessed.

The petition alleges, substantially, that the plaintiff M. E. Roco, being a widow, with several minor children, residing in the county of Grimes, at the request of her mother, the said Lucy A. Green, who was an aged widow and unable to work, removed to her homestead in Hopkins county; that she and her children lived with her mother as members of her family, and so continued to the date of her death, October 4, 1877, the other children having left long before; that since Mrs. Green's death the plaintiff M. E. Roco, then M. E. Brown, had married A. G. Roco; that she, as an alleged constituent of the family of Mrs. Green, invokes the benefit of the probate act of 1870, which provides: "The property reserved from forced sale by the Constitution and laws of the State, or its value if there be no such property, does not form any part of the estate of a deceased person when a constituent of the family survives." (Paschal's Dig., art. 5437.)

The general exception of the defendant was sustained, the suit of the plaintiffs dismissed, and from this judgment they appealed.

It is said by a learned judge that "the relation of husband and wife, parent and child, is the unit of civilization, and the State has thought to encourage that relation by protecting it from absolute want, arising from the vicissitudes of life."

To Texas is given the honor of being the pioneer in that field of humane legislation which provides for homestead exemption, the first law on this subject having been passed, it is said, by the late Republic, on January 26, 1839. (Pas-

chal's Dig., art. 3798.) The wisdom of such legislation, in the encouragement of immigration, "virtue, industry, and love of country," has been so practically demonstrated that it has become a part of the general policy of the country. and now no less than twenty-nine States of the Union have similar laws. (Preface to Thompson on Homestead and Exemptions.)

It will yet take time and experience to determine between the excessive demands of the overzealous advocates of the system, which have impaired individual credit, and that proper medium which respects the just rights of creditors. As may be expected in all new branches of jurisprudence, these laws have been the subject of much discussion and many decisions by the courts of the several States and of the United States. Among other questions discussed is the one presented in this case: What constitutes a family?

The decisions on this subject have been conflicting, varying with the different stand-points from which they have been viewed. In some of the States the question has received a practical solution by express legislative enactments. The necessity of such a solution has long been felt by our courts. As suggested in Whitehead v. Nickelson, 48 Tex., 530, the task of attempting to lay down fixed and definite rules by which it can be determined in every instance what character of persons living together, under the peculiar circumstances of each case, will constitute a family, within the meaning of the Constitution, evidently cannot be free from difficulty; and, as said in Howard v. Marshall, 48 Tex., 481, well-considered legislation on the subject of homesteads and community property is most earnestly called for.

By reason of our meagre legislation, the courts, from necessity, by liberal construction and intendment, have been forced to infringe upon that domain which more properly belongs to another department of the government, and have endeavored as best they could to decide some of the questions presented, not upon general rules founded upon known and fixed prin-

ciples, which should govern all cases, but simply to determine the particular case by such rules of construction and analogy as were considered most applicable. We have met with so much difficulty in this case that at a former term it was referred back for further argument.

A mere aggregation of individuals under one common roof or within the same curtilage, although "devoting their attention to a common object, the promotion of their mutual interests and social happiness,"—as the inmates of a boarding-house or persons employed in the capacity of servants,—does not, of itself, constitute a family. (Whitehead *v.* Nickelson, 48 Tex., 530.)

Cases have been decided in which it has been held that two families can occupy the same homestead, in one of which a widowed daughter with her children resided with her aged father. (Bachman *v.* Crawford, 3 Humph., 213.)

We deduce from the authorities the following general rules to determine when the relation of a family, as contemplated by law, exists:

1. It is one of social status, not of mere contract.

2. Legal or moral obligation on the head to support the other members.

3. Corresponding state of dependence on the part of the other members for this support. (Thomp. on H. and E., secs. 45, 46, and authorities cited.)

The later decisions of this court, in view of the objects contemplated by our Constitution and laws, and in the light of the provisions of the probate act of 1848 on this subject, (Paschal's Dig., arts. 1304, 1305,) have had a tendency not to give too extended a scope to the term "family."

As said in the case of Howard *v.* Marshall, 48 Tex., 478, "The nature of the family intended is left undefined by the Constitution; but we are of opinion that the framers of that instrument had in view a family composed of husband, wife, and children, for whose protection in the enjoyment of their homestead they intended to provide."

We think that the law contemplated—as a general rule, at least—that as the older members of the family grew up and married, or moved off and left the paternal roof, the legal relation of a family as it had formerly existed ceased, and that other and new relations and families would spring up. We do not say that the family relation, or a part of it, might not again become reunited, or that a widowed daughter might not seek an asylum from the misfortunes of life within the home of an aged mother, under such circumstances as would make her a constituent of the family; but we are of opinion that the alleged facts of this case do not entitle the plaintiff to this privilege. The estate of which she claims a homestead is not alleged to be insolvent, and the plaintiff, since the death of Mrs. Green, is shown to have assumed by marriage a new family relation. The common law casts upon her the duty to support her aged mother rather than upon the mother the duty to support her, and upon the plaintiff, while living, the obligation to support her own minor children, and not upon the grandmother. (1 Blackst. Comm., 454.)

If we, then, apply the tests before laid down of legal or moral obligation and dependence, the plaintiff was not, in law, such a constituent of the family of Lucy A. Green as to be entitled to the relief sought. Neither is it apparent, upon principles of equity, under the circumstances presented in the record, why she and her minor children, who had already seemingly shared largely the bounty of the deceased, should be entitled to the exclusive right to the homestead over the claims of the other children, perhaps equally urgent and meritorious.

The judgment is affirmed.

JUDGMENT AFFIRMED.