ciary of the Senate and House of the Legislature, now in session, with the request that after the siad committees shall have examined the same, and made such changes therein as they deem best, they introduce and use their influence so secure its adoption as a part of the Constitution of the State.

In pursuance of the foregoing. the Chairman appointed the following named gentlemen as the committee :

B. H. Bassett, Chairman; Robert S. Gould, W P. Ballinger, A. J. Peeler, L. C Grothaus, W. L. Prather, John B Rector, John A. Gordon, W. L. Crawford, W. E. Bell, D. A. Nunn. X. B. Sanders, A. P. McKinnon, T. S. Maxey and N. G. Shelley.

## MUNZENBERGER v. BOEHME.

### SUPREME COURT, GALVESTON TERM, 1883.

*Homestead—Constituent of Family—Statute Construed.* The mother and sister of a deceased son, who was a single man, are not such constituents of the family as to entitle them to the homestead exemptions under the Probate Act of August 15th, 1870.

Mrs. Boehme, the appellee, (who was the administrator of her son, Victor Boehme, deceased.) brought this suit against the appellants, July 17, 1876, for the purpose of establishing her right to lot No. 91, in New Braunsfels, which she claims was purchased by her son, Victor, with her money, who had taken the deed in his name. Also claiming the same as her homestead, on the ground that she was a surviving constituent of Victor's family at his death.

The appellants, who were creditors of Victor's estate, claimed the lot as assets of the estate, Mrs. Strempel claiming the first lien upon the same under deed of trust; Mrs. Schadwiz claiming the second lien under deed of trust.

Mrs. Strempel's claim had been allowed, and approved by the clerk, and she had filed an application praying for an order directing said lot to be sold, and proceeds to be applied to the payment of her claim. To this Mrs. Boehme filed her opposition, asserting that this claim had been approved by mistake, and through inadvertance. This application and opposition was consolidated with the other suit.

The lot was conveyed by Gabriel Sachern to Victor Boehme, Nov. 22d, 1870. He was a single man, and with his mother and widowed sister, moved upon the lot about January 1, 1873, and continued to occupy it until his death, in March, 1875. As early as November, 1872, they had sent down from Victor's place in the upper portion of the county, where they had been living together for some years, some household and other goods, and stored them in the house on the lot—the house was then undergoing repairs. Victo executed to George Pfeuffer, as trustee, his trust deed upon the lot to secure Mrs. Strempel in the sum of $2000, December, 5, 1872. The other deeds of trust in 1874.

September 21, 1876, the case was tried without a jury, and a judgment was rendered in favor of Mrs. Boehme, adjudging the lot to be her homestead, and not subject to administration. That the claim of Mrs. Schadwiz stood approved as a simple claim without lien. Vacating the approval of Mrs. Stempel's claim so far as it fixed a lien upon the homestead, as claimed by Mrs. Boehme, but approving the same in all other respects. Vesting the legal title to lot No. 91, in Mrs. Boehme. From that judgment this appeal was taken. The grounds relied upon for a reversal of the judgment fully appears in the opinion.

Opinion by Watts, J.—Our constitution protects from forced sale the homestead. Difficulties are often encountered in the practical application of this provision, in determining what is a family, or what signification should be assigned to the term used in the constitution.

As was said by Justice Bonner in the case of Roco v. Green, 50 Texas, 490. "We deduce from the authorities the following general rules to determine when the relation of a family, as contemplated by law, exists :

1. It is one of social status, not of mere contract.

2. Legal or moral obligation on the head to support the other members.

3. Corresponding state of dependence on the part of the other members for this support.

The late decisions of this court, in view of the objects con-

templated by the constitution and laws, and in the light of the provisions of the probate act of 1848, on this subject, have had a tendency not to give too extended a scope to the term "family."

It will be observed that either a legal or moral obligation upon the head to support the other members of the family constitutes one of the tests as announced above.

When upon applying these tests such family is found to exist, the courts have uniformly held that the constitution exempts to its head the homestead.

An examination of the following authorities will furnish illustrations of the practical application of these tests, as well to show the tendency to restrict the signification of the true "family."

Whitehead v. Nickelson, 48 Texas, 517; Howard v. Marshall, ibd., 471; Roco v. Green, *Supra*; Horn v. Arnold, 52 Texas, 161; Andrews v. Hagadon, 54 Texas, 577.

By the statute in force at the death of Victor Boehme, it was provided:

"The property reserved from forced sale by the constitution and laws of this State, or its value, if there be no such property, does not form any part of the estate of a deceased person, where a constituent of the family survives. (P. D., Art. 5487.)

Here the question for determination arises under that section of the statute of 1870: It is not whether there existed such a family as would secure to Victor Boehme, during his life, as its head the homestead exemption.

But the precise question is, was there such a *constituent* of the family surviving him, as could take the exempted property upon his death, to the exclusion of his creditors under the provisions of the above quoted section.

Upon the one hand it is contended that his mother, under the facts and circumstances of this case, constituted a constituent of his family, within the true sense and meaning of the statute, and that she would take exempted property of the deceased under the same.

While on the other hand it is insisted that the mother was not a constituent of the son's family in that sense which would entitle

her to take the exempted property of his estate, to the exclusion of his creditors.

Perhaps there is a distinction to be drawn in determining what is such a family as will entitle its head to the constitutional exemption, and in determining who are constituents of that family. surviving, that would be entitled to take the exempted property upon the death of its head, under the provisions of the statute quoted above.

While upon the one hand, if there is either a legal or moral obligation to support the members, by the head of the family, the other legal requisites existing, this would entitle the head of the family to the exemption. On the other hand we are inclined to the opinion that to constitute a constituent of the family, within the contemplation of the statute, there must be a legal obligation resting upon the head, to support such constituent.

And it might be true, that applying the approved tests, that Victor Boehme, his mother and widowed sister, living together as the record shows, would constitute such a family as would entitle him, as its head, to the constitutional exemption. It might be said that the social status existed, that he was under moral obligation to support his mother and widowed sister, and to some extent, at least, they were dependant upon him for such support.

But admitting this to be true, does it follow that at his death the mother is such constituent of his family, as would entitle her to take the exempted property under the statute? We think not. There was no legal obligation resting upon Victor Boehme to support his mother, however. pressing, love for the parent and filial duty might impose that obligation, still there exists no legal duty upon his part in that particular. Suppose, however, that we are mistaken as to this simple legal test, still we are of the opinion that Mrs. Boehme did not constitute such a constituent of the son's family as to entitle her to take under the statute. The policy of our former probate laws restricted the benefit of the exemption, in insolvent estates, to the surviving widow and minor children.

See Horn v. Arnold, *Supra*, which might be looked to as shedding some light upon the question under consideration.

A subsequent section of the same act seems to be in harmony with the idea that the term " constituent of the family " only included the surviving wife and minor children.

That section is as follows:

" When the husband dies, the wife surviving, or a parent dies, leaving a child, or children, under twenty-one years of age and unmarried, or a daughter unmarried of any age, if the provisions for one year, exempted from forced sale by law, be not found in kind among the property left by the deceased, an equivalent thereto in money shall, on return of the inventory and appraisement, be ordered by the court, to be paid to such survivor or survivors as a claim of the fourth class, provided such survivor or survivors have not sufficient means for their support." (P. D., Art. 5593.)

Provisions for one year are exempt by law, and would come within the meaning of article 5487, if it were not for the qualifications and limitation imposed by article 5593, and it seems that the legislative idea was, that it became necessary to name unmarried daughters of any age, in connection with those who have ever been considered entitled to this exemption, so as to entitle such unmarried daughters to participate in its benefits. However, if that is not true, then it seems to us, by naming the parties that would be entitled to the year's provisions under that article, that the law making power then indicated the persons that was intended to be included in the term " constituent of the family " as used in article 5487, for each of these sections relate to and treat of the same subject matter. It will be observed that neither the mother nor widowed sister are named or otherwise included in the terms of article 5593.

Appellee claims that the lot involved in this controversy was her property, and not that of Victor Boehme, that it was purchased for her, and paid for with her money, but that the deed was taken in the name of her son. Appellant's reply that they loaned their money to Victor Boehme upon the faith of his being

the owner of the lot, and took their deeds of trust upon it in good faith, without any notice whatever of any claim or right upon the part of Mrs. Boehme to the property.

The possession of the lot by Victor Boehme and its occupancy by himself, mother and sister, was not notice of any right or claim of Mrs. Boehme to the same. For that possession was in every respect consistent with the title of Victor Boehme as it appeared of record.

Appellants and their agents testify, that at the time they advanced their money to Victor Boehme and took their respective deeds of trust, that they had no notice whatever that Mrs. Boehme had any claim to or interest in the lot.

There is nothing in the record that in any way tends to contradict the testimony of these witnesses; and there is no fact or circumstance disclosed by the record which would put the appellants upon enquiry.

Victor Boehme was not enhibited by the constitution and laws of the State from encumbering the lot, by deeds of trust, notwithstanding he occupied it as a homestead, and if the appellants in good faith, and without notice of Mrs. Boehme, claim to the lot, advanced their money and secured their trust deeds upon the same, they would occupy the position of *bona fide* purchasers for value, and the fact that there was a secret trust in the lot, in favor of Mrs. Boehme, by reason of her money being invested in it, of which the appellant had no notice, would not in any way effect their rights.

Mrs. Schadwiz presented her claim, (the note,) duly authenticated, to Mrs. Boehme, the administratrix of the estate of Victor Bóchum, deceased, and it was endorsed by her as follows:

"Presented and allowed, January 21, A. D. 1876, to the amount of $422 78, silver coin, bearing interest at ten per cent. per annum from 23d February, 1875, as a claim of class 6, without special lien."

This allowance was approved by the county court, and the claim was assigned to the 6th class.

The statute then in force provided that when the claim or part

thereof, has been registered, the claimant, if he do not submit thereto, shall institute suit thereon within ninety days after its rejection or the same shall be barred.

In presenting his claim for allowance and approval, it seems to us, that the creditor ought at the same time present or make known to the administrator and the Probate Court the existence and nature of any lien claimed by him to secure the same, so that the administrator be fully informed about the claim and all its incidents, that he may act advisedly, and in such way as to protect the estate he represents. And in passing upon the allowance of the claim by the administrator; the Probate Court should have full information upon the subject, that the claim might be assigned to its proper class. The deed of trust was an incident to the claim of Mrs. Schadwiz and should be considered a part of the same, and as that part of the claim was rejected by the administratrix, and that rejection was approved by the County Court, no suit having been brought as required by the statute, she must be considered as having acquiesced, and the lien must be considered as barred.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

---

We adopt the conclusions reached in this cause by the Commissioners of Appeals, as fully warranted by the state of the pleadings, and the facts found on the trial. This decision is confined soly to the construction of the Probate Act of August 15, 1870, and especially to the 26th section of that Act. With this explanation the judgment of the Court below is reversed and cause remanded.

A. H. WILLIE, Chief Justice.