

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Ernest Guinn
County Attorney
El Paso, Texas

Dear Sir:

Opinion No. O-4176
Re: Whether the property of an un-
married daughter is exempt from
taxation under Article 8, Sec-
tion 1-a of the Constitution of
Texas after the death of her de-
pendent mother.

We acknowledge receipt of your request for an
opinion of this department on the following question:

"A family consists of an elderly widowed
mother and her unmarried adult daughter. The
daughter supports the family and owns the house
in which they live, the mother being dependent.
After the death of the mother, does the daugh-
ter's homestead right remain for the purpose
of exemption from State taxes?"

Article 8, Section 1-a of the Constitution of
Texas provides as follows:

"Three Thousand Dollars ($3,000.00) of the as-
sessed taxable value of all resident homesteads as
now defined by law shall be exempt from all taxa-
tion for all State purposes; provided that this
exemption shall not be applicable to that portion
of the State ad valorem taxes levied for State pur-
poses remitted within those counties or other polit-
ical subdivision now receiving any remission of
State taxes, until the expiration of such period of
remission, unless before the expiration of such
period the board or governing body of any one or
more of such counties or political subdivisions

shall have certified to the State Comptroller
that the need for such remission of taxes has
ceased to exist in such county or political
subdivision; then this Section shall become
applicable to each county or political sub-
division as and when it shall become within
the provisions hereof."

It will be noted that the above provisions of our
Constitution provides that the exemption shall apply to
all resident homesteads "as now defined by law." It was
held in the case of Roco v. Green, 50 Tex. 483, speaking
through Associate Justice Bonner, that a single person
could be the head of a family and as such claim a home-
stead. The court in said case set out the following rules
to determine whether or not the relationship of a family,
as contemplated by law, exists:

"1. It is one of a social status, not
of mere contract.

"2. Legal or moral obligation on the
head to support the other members.

"3. Corresponding state of dependence
on the part of the other members for this
support."

Section 50, Article 16, of our Constitution
provides, among other things, "The homestead of a family
shall be and is hereby protected from forced sale, for
the payment of all debts except . . . the taxes due
thereon . . . ."

Section 51 of said Article defines a home-
stead, insofar as we are here concerned, as follows:

"The homestead in a city, town or vil-
lage, shall consist of lot, or lots, not to
exceed in value five thousand dollars, at the
time of their designation as the homestead,
without reference to the value of any improve-
ments thereon; provided, that the same shall
be used for the purpose of a home, or as a

Honorable Ernest Quinn - Page 3

place to exercise the calling or business of
the head of a family."

Under the above quoted facts and numerous deci-
sions of our appellate courts, we think there can be no
question but that the daughter and her aged and dependent
mother constituted a "family" and the house, together with
the lot or lots used in connection therewith, owned by the
daughter, in which they lived, constituted the "resident home-
stead" of the family while it was so occupied, within the
meaning of those terms as used in the constitutional provi-
sions above quoted, and, as such resident homestead, it was
exempt from taxation to the same extent as any other resi-
dent homestead is exempt under the provisions of Section 1-a
of Article XIII of the Constitution. Roco v. Green, 50
Tex. 489; Wolfe v. Buckley, 52 Tex. 641; Barry v. Hale
(Civ. App.), 21 S. W. 783; Drought & Co. v. Stallworth
(Civ. App.), 100 S. W. 188; Hutchenrider et al v. Smith
(Com. App.) 242 S. W. 205; Woods et al v. Alvarado State
Bank (Sup. Ct.), 19 S. W. (2d) 35; Daniel v. Cook et al.
(Civ. App.), 70 S. W. (2d) 1024; McCusker v. Field (Civ.
App.), 76 S. W. (2d) 816; Standard Paving Co. v. Tolson
et al. (Civ. App.), 86 S. W. (2d) 789; Chamlee v. Chamlee
(Civ. App.), 113 S. W. (2d) 290; Reconstruction Finance
Corporation v. Burgess (Civ. App.), 155 S. W. (2d) 977, and
authorities there cited.

So far as we have been able to ascertain the
exact question has not been presented to our courts, nor
have we been able to find any case from other jurisdictions
in point.

The question of whether the homestead rights of
the daughter continued after the death of her mother is
the real question with which we are here concerned. If
such rights continued, then your question must be answered
in the affirmative, for one of those rights is the exemption
of the homestead from taxation to the extent provided in
Section 1-a of Article 8 of the Constitution.

We think that the case of Woods v. Alvarado State
Bank, supra, as construed in Daniel v. Cook, supra, has

Honorable Ernest Guinn - Page 4


definitely settled this question.

In Woods v. Alvarado State Bank, it was said:

"In view of our constitutional and statutory
provisions concerning homestead rights, we have
concluded that in this state the homestead is to
be regarded as an estate created not only for the
protection of the family as a whole, but for the
units of the family, including those who survive,
and embracing the head of the family at the time
of its dissolution, whether the dissolution has
been brought about by death or by dispersal, as
distinguished from a mere privilege accorded the
head of the family for the benefit of the family
as a whole."

The opinion of the Court of Civil Appeals, 275
S. W. 187, contains a full statement of the facts in the
case from which the foregoing quotation was taken.

"On May 31, 1901, a divorce was granted in
the district court of Johnson county, Tex. in
favor of Carrie Woods against J. D. Woods. At
the time said divorce was granted, the said
parties, being husband and wife, had two children,
Pearl, about 10 years of age, and a boy between
8 and 9 years of age, and had, with said children,
been occupying as their homestead about 104 acres
of land, which was the separate property of ap-
pellant J. D. Woods. In the divorce decree this
104 acres of land was set apart to appellant J. D. Woods
as his separate property, and the custody of the two
children was awarded to their mother, Carrie Woods.
The children, however, continued to live on the
home place with their father, 2, 3 or 4 years, un-
til Pearl Woods, the girl, was 12 or 13 years of
age, when they both went to Oklahoma. Pearl, the
girl never returned to live with her father, but
continued to live in Oklahoma, where she married
in 1906 when about 14 years of age. The boy, in
about 1906, returned to Texas, and made several

trips from Texas to Oklahoma, living with
his father a part of the time and elsewhere a
part of the time, until he was about 21 years
of age, when he married and settled in Oklahoma.
The boy has been married and living in Oklahoma
10 years. The girl has been married and living
with her husband in Oklahoma for the last 18 or
20 years. Between the date the divorce was
granted in 1901 and about 1907, and while said
children, or at least one of them, was living
with appellant a part of the time, he bought
several small tracts of land, aggregating about
124 acres, adjoining said original 104 acres,
making a total of about 228 acres, all in one
block. Appellant has never remarried, and for
the last 10 or 12 years has lived on said land
alone.

"On July 3, 1919, appellant J. D. Woods
executed his note in the sum of $6,327, due and
payable to the appellee bank on July 3, 1920.
On March 22, 1920, a little more than three
months before the maturity of said note, appellant
executed a deed conveying all of said land to his
daughter, Mrs. Pearl Hale, who resides with her
husband at Fairview, Okl. The consideration
stated in this deed was '$10 paid and love and
affection for daughter, and settling with her for
her interest in my estate, valued at $4,000.'

"Appellant having made default in the pay-
ment of said note, appellee bank brought suit
on same, and recovered a judgment against ap-
pellant for $6,582. Thereafter, the bank caused
an execution to be issued and levied upon 214
acres of said 228 acres, whereupon appellant and
his daughter, Pearl Hale, and husband, procured a
temporary injunction restraining the sale. On the
trial of this injunction case before the court
without a jury, the court perpetuated said injunc-
tion as to the 104 acres, the land appellant owned
at the time the divorce was granted, but dissolved
said injunction as to the remainder of the 214 acres,

or approximately 110 acres, the land acquired
by appellant after the divorce was granted.
Both sides excepted to the judgment of the court.
The case is before us on assignments by appellant,
contending the whole of said land was exempt to
J. D. Woods as a homestead, and therefore not
subject to execution, and, on cross-assignments
by appellee, contending no part of said land was
exempt to appellant as a homestead."

The Supreme Court held that "Woods was entitled
to his 200-acre homestead, and that the trial court should
have set apart that amount of land to him or his vendees."

The facts in Daniel v. Cook, supra, as set out
in the opinion of the court, are as follows:

"In this suit brought by W. S. Daniel
against Mrs. M. J. Cook, a widow, the plaintiff,
among other things, sought to foreclose an at-
tachment lien upon 125 acres of land in Jones
county, belonging to the defendant.

"Mrs. Cook defended on the ground that
the land was her homestead, and for that reason
exempt. Mrs. Cook, on or about September 17,
1907, after she became a widow, acquired, by
purchase, the land in question, and together
with eight minor children of hers moved upon and
occupied it as a home. She alleged that it
continued to be her homestead up to the time of
the levy of the attachment.

"In reply to this contention, Daniel pleaded
that Mrs. Cook had long since abandoned the
property as her homestead, and had acquired,
owned, and lived upon other land in Taylor county
and elsewhere, by reason whereof the land in
controversy had long since lost its homestead
character. The evidence showed that Mrs. Cook, with
two unmarried daughters, moved from the farm to
Abilene in 1924, and had not since occupied the

Honorable Ernest Guinn - Page 7

farm in question. At the time suit was filed
Mrs. Cook with her only remaining unmarried
daughter was living with another married daugh-
ter in California. The single daughter was
about 27 years of age.

"The jury to whom the case was submitted
on special issues found that: (a) Mrs. Cook
with unmarried members of her family had oc-
cupied the farm as a homestead for several
years prior to 1923; (b) that she at all times
since 1923 had been the head of a family con-
sisting of herself and unmarried dependent child
or children; (c) that she had at all times since
1923 intended to move with the unmarried de-
pendent member, or members, of her family back
to the farm and make it a permanent home for
herself and such unmarried dependent member,
or members, of her family; (d) and that Mrs.
Cook, as the head of a family, never intended
at any time to use any of the property acquired
by her in Abilene as a permanent home for herself
and unmarried dependent member, of members, of
her family. The trial judge, after refusing a
requested peremptory instruction for Daniel, gave
judgment for Mrs. Cook, denying foreclosure of the
attachment lien. From this judgment, Daniel has
appealed."

That part of the court's opinion pertaining to
the question we are here considering is as follows:

"We are further of the opinion that since
the uncontroverted evidence showed that prior
to 1923 the property had been the homestead of
Mrs. Cook, and since the jury found, based upon
evidence the sufficiency of which is not directly
challenged, that at all times since and prior to
the time she moved away from the farm she in-
tended to move back and make it her home, and
that in the acquisition and use of other property
in Abilene she never intended to make the latter

her permanent home, her status as to the
homestead exemption herein asserted was the
same as if she had never moved away. In
other words, she continuously occupied the
property as her homestead up to and including
the time of the levy of the attachment. If
so, the question is: Was it necessary that
there be any remaining constituent of the
family other than Mrs. Cook herself? This
question, we think, must be regarded as settled
by the opinion in Woods v. Alvarado State Bank,
118 Tex. 586, 19 S. W. (2d) 35. Counsel for
appellee, in argument, sought to show that the
discussion of this point in said opinion was
dicta. A distinction is argued, based upon
whether the homestead is acquired while both
husband and wife are living, or by one of the
spouses after the marriage relation, for any
reason, has been dissolved. It is well set-
tled, and seems to be conceded, that if the
homestead is acquired at a time when husband
and wife are living together, the exemption
continues so long as it remains occupied, re-
gardless of the fact that no constituent members
of the family remain, other than the survivor.
We are unable to see any good reason for making
the distinction suggested. The Supreme Court's
opinion referred to, we think, must be regarded
as holding that there is no such distinction.
In that case the land in controversy was acquired
after dissolution of the marriage relation. The
manner of dissolution is unimportant. The court's
opinion could not be correct on the facts of that
case if the distinction here insisted upon should
be held to exist. The discussion of the point
was, therefore, we think, not merely dicta."

It seems to be the settled law of this State
that when a homestead is once established the rights
belonging thereto do not cease to exist by reason of the
death or dispersal of the constituent members of the
family, but such rights continue for the protection of
the surviving units of the family, including the head

of the family.  In the instant case, the unmarried adult daughter and her mother, while living together, constituted a family, with the daughter as its head.  Therefore, we see no good reason to hold that the death of the mother would have the effect of dissolving the homestead rights of the daughter that had been acquired while the mother was living. The fact that the daughter is the sole survivor of the family is unimportant and insufficient to warrant a contrary conclusion.

We answer your question in the affirmative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JAN   1942

FIRST ASSISTANT
ATTORNEY GENERAL

By

Richard H. Cooke
Assistant

RHC:FS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN