PAUL SINGELAKIS, PROSECUTOR, v. ROBERT H. DAVID-
SON, JUDGE OF THE PASSAIC COUNTY COURT OF
QUARTER SESSIONS, AND HELEN FOTINIS, RESPOND-
ENTS.

Submitted October 6, 1936—Decided December 10, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
PERSKIE.

For the prosecutor, *Walter V. Schwartz.*

(No brief filed for respondents.)

The opinion of the court was delivered by

PERSKIE, J. The writ of *certiorari* in this cause brings up
for review the action (no judgment or order is made to appear
in the record submitted to us) of the Court of Quarter Ses-
sions of the county of Passaic in refusing the motion made in
behalf of the prosecutor to set aside his conviction, as a dis-
orderly person, in the Court of the First Criminal Judicial
District of the county of Passaic.

No brief is filed for the respondents. From the meager record submitted we learn that one Helen Fotinis charged that prosecutor obtained meals and other accommodations at her premises, which she alleged was a boarding house, for a period of five months and for which there was due her $137; that the prosecutor without notice and with intent to defraud her left the premises, and therefore prosecutor violated section 59-8K (erroneously designated as section 8-0 in the complaint) of our Disorderly Persons act (Revision 1898) as amended, *Pamph. L.* 1921, *ch.* 153, *p.* 426; 1 *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 946, which provides as follows:

"1. Any person who shall obtain food, lodging or other accommodation or service at any hotel, inn, boarding or eating house, or culinary establishment, or hospital, with intent to defraud the owner or keeper thereof, shall be deemed and adjudged to be a disorderly person."

The return to the writ discloses that the prosecutor waived a trial by jury; entered a plea of not guilty and submitted himself, without objection, to the jurisdiction of the First Criminal Judicial District Court.

The record discloses that complainant testified:

"That she occupied a flat consisting of five rooms, comprising a kitchen, a dining room, a parlor and two bed rooms, and also had two rooms in the attic; that she lived there with her husband and three minor children and an adult brother.

"That she had 'sometimes two, sometimes, three, sometimes four, sometimes five boarders;' that the said Paul Singelakis had boarded in her house for about five years, that on or about the 28th day of November, 1935, he had left her premises without notifying her, he being indebted to her to the amount of $137 for meals and lodging representing a period of aproximately five months."

And the record further discloses:

"That Paul Singelakis, the defendant, testified that he did not owe the said Helen Fotinis the sum of $137; that he did not leave the premises without notifying her with the intent to defraud her."

The judge of the said court adjudged prosecutor—defendant below—guilty as charged, placed him on probation and

ordered him to make restitution to the complainant at the rate of $2 a week. Thereafter, for reason not made to appear but characterized as a "sufficient reason," the judge set the judgment aside and the cause was listed for a re-trial. It was re-tried. The judge states that the testimony on the second trial was substantially the same as that which was adduced at the first trial—"no new witness or new evidence" —so he again adjudged prosecutor guilty as charged and imposed the same sentence he first imposed on prosecutor. Appeal was then taken by the prosecutor to the Court of Quarter Sessions of Passaic county. The proceeding in that court appears under the caption "Order of Affirmance." That proceeding, as it appears in the record, consists of a statement that the court met; it sets forth the name of counsel for the state and prosecutor, and that counsel for the latter moved (no grounds stated) to have the conviction of the lower court set aside. And that "after argument of counsel, the court denied the motion."

Two points are here argued for the prosecutor. First, that the proofs failed to establish that complainant conducted a boarding house, and therefore, the court was without jurisdiction, in the premises, to adjudge prosecutor a disorderly person under the provisions of the act. Second, that the verdict was contrary to the weight of the evidence.

We are thus met with the question whether complainant conducted a "boarding house." What is a boarding house? In 8 *C. J.* 1132 a boarding house is defined in this manner:

"A house where the business of keeping boarders generally is carried on, and which is held out by the owner or keeper as a place where boarders are kept; one for the accommodation of those who enter under contract for entertainment at a certain rate for a certain period of time, as for a week or month, at a rate of compensation agreed on; a house kept principally for the residence of permanent boarders."

In *Friedrich Music House* v. *Harris,* 106 *N. W. Rep.* 869; *L. R. A.* 1918-D 400, the Supreme Court of Michigan in construing a statute which gave a lien to the keeper of a hotel, or inn, or boarding house upon the baggage and effects of his guests, defined a boarding house in this fashion:

"A 'boarding house,' within the meaning of this statute, was well defined in *Cady* v. *McDowell,* 1 *Lans.* 484, from which we quote as follows: 'A boarding house is not, in common parlance or in legal meaning, every private house where one or more boarders are kept occasionally only, and upon special considerations. But it is a *quasi*-public house, where boarders are generally and habitually kept, and which is held out and known as a place of entertainment of that kind. * * * A boarding house is as well known and as distinguishable from other houses, in every city and village in the country, as an inn or tavern. It is a house where the business of keeping boarders generally is carried on, and which is held out by the owner or keeper as a place where boarders are kept.'

"See, also, 8 *C. J.* 1132, and cases cited in notes. See note to *Nance* v. *O. K. Houck Piano Co., Ann. Cas.* 1914D, 839; *Black's Law Dict., tit. 'Boarding House;'* 1 *Words and Phrases* 815."

In our state, the Court of Errors and Appeals, in *Trainor* v. *LeBeck,* 101 *N. J. Eq.* 823; 139 *Atl. Rep.* 16, had before it a decree construing a restrictive covenant in a deed which provided that no building should be erected on the premises except a single dwelling house to be devoted exclusively to private dwelling purposes. The complaint was that the premises were used as a boarding house or lodging house. The court points out the clear and sharp distinction made by the Supreme Court of Maine in *Robbins* v. *Bangor Railway, &c., Co.,* 100 *Me.* 496, 497, between a boarding house and a private dwelling house, and held:

"* * * Thus, the test is whether the petitioners' tenant occupied the house as a home for himself and his wife and children, and incidentally kept boarders also, or whether he occupied it as a place for carrying on the business of keeping boarders, although, while prosecuting the business and as a means of prosecuting the business, he and his wife and children lived in the house also. Under this test, neither the size of the house nor the number of the boarders are of importance, except as evidence, that may have weight in determining which is the principal use for which the building is occupied."

Giving the testimony of the complainant, and the legitimate inferences to be drawn therefrom, the most favorable construction, it is clear that she did not occupy the premises as a place for carrying on the business of keeping boarders. The location and size of the premises, the very limited number of bed rooms, the fact that complainant, her husband, three children and an adult brother all lived in the house, tend to compel the conclusion that the principal use for which the premises was occupied was that of a private home, and not that of a boarding house. We therefore conclude that the court was without jurisdiction in the premises to adjudge the prosecutor guilty as a disorderly person. This result is necessarily dispositive of the second point.

Judgment is reversed, but without costs.