**PARDO et al. v. SOUTHAMPTON CIVIC CLUB et al.**

No. 12258.

Court of Civil Appeals of Texas. Galveston.
April 19, 1951.

Rehearing Denied May 10, 1951.

Emmet Alpha, Jr., of Houston, for Pardo.

Fulbright, Crooker, Freeman & Bates, Newton Gresham and L. Keith Simmer, all of Houston, for Southampton Civic Club and others..

MONTEITH, Chief Justice.

This action was brought by the members of Southampton Civic Club for a judicial construction of the wording used in the restricting of lots in Southampton Place Addition to the City of Houston, and seeking a permanent injunction restraining Mrs. Blondelle Ruby Pardo and her assigns from using or causing Lot 10 in Block 45 of said addition to be used for any purpose other than as a dwelling and residence for a single family.

In a trial before the court judgment was rendered restraining Mrs. Pardo until April 15, 1973, from using or permitting the use of said property for the manufacture or sale of intoxicating liquor or for conducting any noxious trade or business and from using or permitting its use for wholesale or retail business of any kind. The court decreed that the property might be used for a bona fide place of single family residence and at the same time for business purposes not therein specifically enjoined.

Both sides have appealed from the court's judgment wherein it decreed that Mrs. Pardo might use said lot for a joint business and residential purpose.

On application of all parties the trial court prepared and filed his findings of fact and conclusions of law. The material facts in the case are undisputed. They were the subject of stipulation in the trial court. Mrs. Blondelle Ruby Pardo purchased said Lot 10 in Block 45 of Southampton Place Addition in February, 1948. Shortly after she purchased the property she rented the house located on the property to a partnership doing business as Grebe and Doremus Processing Company, for business purposes. This action was filed in March, 1949, to restrain and enjoin such use.

Southampton Addition was placed on the market for home builders in 1922, after a trust agreement had been entered into between E. H. Fleming, its developer, and the San Jacinto Trust Company, trustee. A reference incorporating the trust agreement and restrictions was placed in each deed to lots sold in the addition, including Lot 10 in Block 45, which was sold to Mrs. Pardo on February, 1948.

The parts of said trust agreement embodying the restrictions material to this appeal read:

"Know All Men by These Presents: That E. H. Fleming, hereinafter styled First Party, and sometimes styled Trustor, and the San Jacinto Trust Company, hereinafter styled Trustee, both of the City of Houston, Harris County, Texas, have this day entered into the following Trust Indenture and Agreement as follows, to-wit:

"That whereas the said First Party has originated a plan or project to purchase, improve and subdivide as a high class and exclusive residential and business community that certain tract or parcel of land situated in Harris County, Texas * * * such subdivision to be known as the Southampton Addition to the City of Houston, Texas, and * * *."

In Article VI, "Basic Restrictions," after stating that "in furtherance of the plan for the improvement of the property herein

described, the following basic restrictions are hereby declared * * *," appears the pertinent restrictions here involved, which are here set out in full:

"(a) That there shall never be erected, permitted, maintained or carried on upon any of said property any saloon, or place for the sale or manufacture for sale of malt, vinous, or spirituous liquors; any foundry, brick yard, cemetery; any establishment for the care or cure of persons afflicted with tuberculosis, or any institution for the cure or restraint of the mentally impaired, or any detention home, reform school, asylum, or any institution of like or kindred nature; nor any slaughter house or tannery or any noxious interest, trade or business.

"(b) That no part of said property shall ever be used for the purpose of wholesale or retail business of any kind excepting such portions as may be especially designated by the First Party for that purpose, and such designations shall be especially set forth in the particular deed or deeds permitting the same.

*　　*　　*　　*　　*　　*

"No apartment house or duplex will be permitted in the Addition; the object of this provision being to prohibit multiple housing throughout the entire Addition."

█　█ It is the well settled rule in this state that the law recognizes the right of parties to contract with relation to property as they see fit, provided they do not contravene public policy and provided their contracts are not otherwise illegal. Braswell v. Woods, Tex.Civ.App., 199 S.W.2d 253, writ of error refused, no reversible error, and the authorities there cited. It is also well settled that, where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee upon the theory that there is a mutuality of covenant and consideration, and that mutual negative equitable easements are created. Braswell v. Woods, supra.

It is undisputed in the record that the lots in Southampton Addition were restricted to the use for single family dwelling and for business purposes by the express language of paragraphs (a), (b) and (e) of such restrictions. Paragraphs (a) and (b) of the restrictions provide for the use of certain lots in the addition which the developer reserved the right to designate and sell for the purposes of wholesale and retail business, subject to certain restrictions placed on use of the lots for business purposes in paragraph (a).

█ Article VI of said restrictions sets forth what is designated as the "basic restrictions" "in furtherance of the plan for the improvement of the property." It is the well established rule that in construing written instruments, each word in the instrument must be given effect according to its ordinary signification, if it be possible to do so, without defeating the obvious purpose and intent of the instrument. T. & N. O. Ry. Co. v. Demilley, Tex.Civ.App., 41 S.W. 147.

"In construing covenants or restrictions as to the use of property, the circumstances and conditions surrounding the parties and property must be considered as well as the manifest objects of the grant or restriction. So, the intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation." 26 C.J.S., Deeds, § 163.

█ Applying the above rules to the facts in the instant case, it is, we think, clear that the developer of Southampton Place Addition clearly intended that the property in the addition which was reserved for residential use should be used for that purpose exclusively and that the property in the addition which had been reserved for business uses should be used exclusively for that purpose. As we construe the word "exclusive" in said restrictions it must have been used to express the developer's intention that residential use was to be exclusive of business use.

In paragraph (e) of such restrictions the lots and blocks in the addition, including Lot 10 in Block 45, but excepting

Block 13 and parts of Block 14, were designated as the area upon which dwellings of specified minimum cost must be built. All the lots listed in paragraph (e) of the restrictions, including said Lot 10 in Block 45, were designated and sold as integral parts of a "high class exclusive residential" area and were restricted to the exclusive use of a residence of a single family.

In the case of Green v. Gerner, Tex.Civ. App., 283 S.W. 615, 616, affirmed Tex.Com. App., 289 S.W. 999, permanent injunction affirmed, Tex.Civ.App., 27 S.W.2d 828, this Court, speaking through Chief Justice Pleasants, said, "The evidence shows that appellees have erected costly homes on their respective premises, which will be made much less desirable and their value materially depreciated if appellants are permitted to construct the apartment house contemplated by them. The right of the owners of property in a restricted district to prevent the violation of the restrictions by injunction is well settled, and is not questioned by appellants."

In the case of Walker v. Dorris, Tex. Civ.App., 206 S.W.2d 620, 622, it was held that a restriction "that no building shall be erected on said premises except a dwelling house and outbuildings thereon" should be construed as a restriction on the subsequent use of the dwelling on the property as an office for a physician. Quoting with approval from 26 C.J.S., Deeds, § 164, the Court said: "As employed in building restrictions the words 'dwelling house' are, in the absence of anything to the contrary, to be construed in their ordinary sense as a house occupied as a residence, in distinction from a store, office, or other building. The term defines the use to which a building shall be put and not merely the form or character of the structure, and a provision restricting the erection of buildings other than dwelling houses or residences applies not only to the erection of the building in the first place, but likewise forbids the use of a building erected as a dwelling house or residence for other than residential purposes."

Decisions from other jurisdictions dealing with restrictions in exclusive residental additions, with few exceptions, follow substantially the same line of reasoning as adopted by our courts. In the case of Barnett v. Vaughn Institute, 134 App.Div. 921, 119 N.Y.S. 45, 46, the Supreme Court of New York, Appellate Division, in construing the question as to whether the use of premises for a private sanitarium violated restrictions similar in many respects to those on Southampton Place Addition, said: "A private dwelling is a place or house in which a person or family lives in an individual or private state. The words 'dwelling house' involve the idea of a house, a residence, where persons live in settled abode. A dwelling house is a 'house intended to be occupied as a residence, in distinction from a store, office, or other building.' Webster's Dictionary. A private dwelling house is one intended for private living. * * * If the covenant means that there shall be erected on the premises only buildings intended for a house or private dwelling, it is the merest evasion to defeat the intention by using the structure for what a private dwelling is not used. Then that which was a private dwelling is no longer such. * * *"

From the fact that the right to use the lots in Southampton Addition was expressly conditioned upon the prior designation of such lots for such use in the restrictions and by an appropriate declaration to that effect in the deed to the purchaser of the lot, we think it was the intention of the developers of the addition to designate said Lot 10 in Block 45 exclusively to residential use and exclusive of business use.

Under their third and fourth points of error Southampton Civic Club et al. contend that the trial court erred in refusing to enjoin all business use of the lot in question because the circumstances surrounding the adoption of the basic restrictions in the general plan of development bear out the dual plan or scheme of a high class and exclusive residential community, in which Lot 10 of Block 45 is expressly included, and because a joint business and residential use, as permitted by the judgment of the trial court, of the building on said Lot 10 of Block 45 does not conform to a dwelling, as required by paragraph (e) of the restrictions and does violence

to the expressed intention of the parties, creating a hybrid use which they contend is neither a high class and exclusive residential use nor a high class and exclusive business use.

Under the above authorities it seems to be settled both in this state and in other jurisdictions that in order to carry out the intention of the developers of this addition, as evidenced by the restrictions above quoted, the use of said Lot 10 of Block 45 of Southampton Place Addition must be limited to a single family residence.

We have carefully considered all points of appeal presented by the parties in their briefs and find no other errors in the record. The judgment of the trial court will be reformed and judgment here entered in accordance with this opinion.

Reformed and affirmed.

GRAVES, J., not sitting.