**STOUT et ux. v. ANTHONY.**

No. 6259.

Court of Civil Appeals of Texas.
Amarillo.

Nov. 17, 1952.

Rehearing Denied Dec. 22, 1952.

880

Earl Luna, Dallas, for appellants.

Sanders, Lefkowitz & Green, Dallas, for appellee.

MARTIN, Justice.

Appellants, Harry W. Stout and wife, Allie Stout, brought suit to foreclose an abstract of judgment lien against Lot 7 in Block 9/1612 of Mount Auburn addition to the City of Dallas, owned by appellee, Myrtle M. Anthony. Appellee pleaded that the lot was her homestead and therefore exempt from foreclosure and sale under appellants' lien. On close of the testimony appellants filed their motion for an instructed verdict and appellee likewise filed a motion for an instructed verdict. On its own motion the court withdrew the case from the jury, ruled that the lot was exempt as a homestead, and rendered judgment for appellee. Appellants perfected an appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District. The cause was transferred to the Seventh District by the Supreme Court in equalizing the dockets of the Courts of Civil Appeals.

Appellants by their two points of error present the sole issue that appellee and her adult son and daughter do not constitute a family as protected in the homestead right by Article 16, Section 50 of the Constitution of the State of Texas, Vernon's Ann. St., and Article 3832, Revised Civil Statutes of Texas.

■ Article 16, Section 50 of the Constitution of the State of Texas and Article 3832, Revised Civil Statutes of Texas, protect the homestead of a family from forced sale, but the Constitution and Statutes do not define when the relationship of a family exists. The rules defining a family are detailed in Roco v. Green, 50 Tex. 483, 490:

"We deduce from the authorities the following general rules to determine when the relation of a family, as contemplated by law, exists:

"1. It is one of social status, not of mere contract.

"2. Legal or moral obligation on the head to support the other members.

"3. Corresponding state of dependence on the part of the other members for this support."

■ An examination of the evidence under the rules set forth in Roco v. Green, supra, reveals the following pertinent facts: appellee and her second husband were divorced and appellee moved from the town of Roscoe to the City of Dallas. After some temporary moves, appellee purchased the lot in issue in this cause. At the time of the purchase of the lot, in October 1945, appellee's son, Samuel C. Anthony, was approximately 32 years of age and in the

Armed Forces of the United States. Appellee's daughter on such date of purchase was approximately 26 years of age and also in the Armed Forces of the United States. The daughter was a graduate of Texas State College for Women and the son was a graduate of the University of Texas. Both children had worked in government service prior to the time they entered the Armed Forces of the United States and they resumed positions with the government shortly after returning from the Armed Forces. The son was not employed during the brief period he lived with his mother in Dallas before going to employment in Brownsville. The daughter worked for the OPA in Dallas, Texas, while living with her mother on the lot in issue. She later entered employment in Washington, D. C., to be near the man she intended to marry.

An examination of the undisputed facts recited above reveals there was no legal or moral obligation on the part of appellee to support her two adult children, nor was there a corresponding state of dependence on the part of either of said children for support from the appellee. Such facts, therefore, do not establish the existence of a family. Roco v. Green, supra.

Appellee's contention is that she was the head of a family and entitled to the homestead exemption. Under the facts in the cause, the ruling of the Commission of Appeals in L. E. Whitham & Co. v. Briggs' Estate, Tex.Com.App., 58 S.W.2d 49, clearly eliminates the issue of legal and moral obligation on appellee to support her adult children and also eliminates the corresponding state of dependence on the part of such children. "It would be unreasonable to hold that a mother is under any legal or moral obligation to support her adult son, who is able-bodied and capable of supporting himself. Nor can it reasonably be said that the mother, who is capable of supporting herself and does support herself, is dependent on her son for support. * * * After the son of Mrs. Briggs became an adult, there was no 'family'; therefore it necessarily follows that the lots could not then become the family homestead."

Appellee particularly urges that the existence of a family was shown in appellee's relationship with her daughter. A check of the statement of facts reveals that both appellee and her daughter recognized clearly that no obligation, legal or moral, existed on the part of the mother to support her daughter and no corresponding dependence on the mother existed on the part of the daughter:

"A. No. She gave me $15 one time. She felt that she should pay board, so I said 'OK'. She gave me $15 and she never could get around to having any money any more because she needed it for something else."

The daughter recognized that she should pay board and the mother approved this view. Also, the daughter had the money to pay such board but used it for something else. The above testimony, supported by other testimony of like character, clarifies the issue and reveals that even appellee and her daughter recognized there was neither a legal nor a moral obligation on the part of the mother to furnish support to the adult daughter, nor a corresponding dependence on the part of the daughter. Therefore, no "family" existed under the testimony of appellee herself.

The cases cited in this cause have been examined particularly in the light of the expression found in some of the cases as follows: "The word 'dependence,' as here used, is not restricted to support and maintenance, food and clothing. It is intended to include moral and mental training". Central Life Assur. Soc. v. Gray, Tex.Civ. App., 32 S.W.2d 259, 261. In the light of this statement it is observed that the cases cited in this cause on the issue of a "family" require, to support such issue, either a legal or a moral obligation to support the member of the family on the part of the head of the family and corresponding minority of a son or daughter of the head or corresponding minority of the member together with a state of actual dependence or actual dependence of the member on the head of the family for support, clothing and maintenance. No cases cited sustain the existence of a "family" where the obliga-

tion of the head to support the member and the corresponding dependence of such member on the head of the family is solely in regard to moral and mental training. Further, if "moral and mental training" alone be conceded as sufficient to meet the term "dependence" there is still no legal or moral obligation on the head to support the other members and corresponding state of dependence on the part of the other members for this support when such other members are a son 32 years of age and a daughter 26 years of age. United Fidelity Life Ins. Co. v. Plainview Building & Loan Ass'n, Tex.Civ.App., 81 S.W.2d 1092; L. E. Whitham & Co. v. Briggs' Estate, supra; Texas Bank & Trust Co. v. Teich, Tex.Civ.App., 287 S.W. 666; Real Estate Land Title & Trust Co. v. Street, Tex.Civ. App., 85 S.W.2d 341; Standard Paving Co. v. Tolson, Tex.Civ.App., 86 S.W.2d 789; Garrard v. Henderson, Tex.Civ.App., 209 S.W.2d 225.

The relationship of appellee with her adult son and daughter, or either of them, did not constitute a "family" under the application of the rules set forth in Roco v. Green, supra, and there was no homestead right. Appellants' points of error are therefore sustained.

The judgment of the trial court is reversed and judgment is rendered for appellants.