SOUTHAMPTON CIVIC CLUB ET AL V. O. DEAN COUCH, JR., ET AL.

No. A-6929. Decided December 31, 1958.
Rehearing overruled March 18, 1959.
Second rehearing overruled April 22, 1959.
(322 S.W. 2d Series 516)

*Abner V. McCall* and *Angus McSwain,* both of Waco, *William E. Loose, Urban, Elledge & Bruce,* all of Houston for petitioners.

*Allen & Allen* and *Ira J. Allen,* all of Houston, for respondents

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

The sole question involved in this case is the construction and application of a certain restrictive covenant on Southampton Place Addition to the City of Houston. The respondents are home owners in the Addition. Seven suits were filed, one against respondent Couch and one against each of six other defendants. By order of the court they were consolidated and tried as one case. The relief sought in each case was to restrain the defendant therein from renting a room or rooms in his residence for lodging. Most of the lodgers are students in Rice Institute. The trial court held that as a matter of law the renting of a room or rooms was violative of the restriction hereinafter mentioned, but since respondent had raised the issue of waiver of the restriction, special issues were submitted to the jury thereon. The jury found against the defense of waiver, and judgment was rendered by the trial court against each defendant, enjoining him from "renting a room or rooms" in his dwelling or elsewhere on his premises. On appeal the judgment of the trial court was reversed and judgment rendered dissolving the injunction. 313 S.W. 2d 360.

The restriction relied upon is contained in a trust instrument executed by the developer of the Addition in 1922, filed for record in Harris County, and made a part of each deed by reference. The instrument consists of several pages. After formal parts the purpose of the restrictions is stated in this language: "That whereas the said First Party originated a plan or project to purchase, improve and subdivide as a high-class and exclu-

sive residential and business community that certain tract or parcel of land * * * ." Then follow a number of restrictions in furtherance of the plan. They deal with prohibited businesses, and at some length provide that buildings in certain areas shall conform to specifications outlined upon designated lots. Certain sections deal with the materials of which the buildings may be constructed, the minimum cost thereof, different minimums being provided for different lots. There are restrictions as to setback requirements. The particular restriction involved in this case reads as follows: "No apartment house or duplex will be permitted in the Addition, the object of this provision being to prohibit multiple housing throughout the entire Addition."

The record reflects that the number of roomers in the homes in question varied from one to six. Petitioners do not contend that the number is important. They do not claim that the man renting to six roomers stands in any different position from the man who rents to one, and neither does the judgment make any distinction in that regard, but enjoins each and every defendant from renting one or more rooms. We do not, therefore, have the question of whether the defendant who rents to six roomers is conducting a rooming house. This case must be decided just as if there were but one defendant and he were renting one spare room.

■ The restrictions imposed upon Southampton Place Addition have been before the appellate courts in two cases—Pardo v. Southampton Civic Club, 239 S.W. 2d 141 Wr. er. ref., and Rudy v. Southampton Civic Club, 271 S.W. 2d 431, wr. er. ref., n.r.e. Petitioners rely upon those cases and take the position that they decide the very question here involved in their favor. The fact situations in those cases are different from that in the instant case. The Court of Civil Appeals has disregarded the language in those cases on the ground that it was dicta. While the principal question decided in the Pardo case involved the use of property for business purposes, the opinion reflects that the case called for the construction of the restrictions, and in construing the particular restrictions here involved, it was held that lots in the Addition were "restricted to the exclusive use of a residence of a single family." We refused the application for writ of error without qualification. We accept that construction and will base our opinion thereon. That opinion does not undertake to define what is meant by the term "single-family residence."

In the Rudy case, in which we refused writ of error, no reversible error, the opinion approved the instruction of the trial court that the word family includes "parents, children and domestic servants." That definition is entirely too restrictive, and we do not approve it. It would exclude a dependent mother or an invalid brother or sister.

If the question were whether the operation of a rooming or boarding house as a business would violate the restriction under review, cases are legion holding that such operation would violate the restrictions, and a number of cases so holding are cited in annotations 124 A.L.R. 1011 and 14 A.L.R. 2d 1376. Some of those cases involved either expressly or by construction restrictions limiting the use to a single-family residence. See Sayles v. Hall, 210 Mass. 281, 96 N.E. 712, 41 L.R.A. N.S. 625; Pierce v. Harper, 311 Mo. 301, 278 S.W. 410; Hooker v. Alexander, 129 Conn. 433, 29 A. 2d 308; Mayer v. Livingston, 172 N.Y.S. 2d 45; Baddour v. City of Long Beach, 279 N.Y. 167, 18 N.E. 2d 18, 124 A.L.R. 1003.

We are referred to no case, and have discovered none, which holds that the renting of a single room in a dwelling is violative of a single-family residence restriction. On the other hand, there are a number of cases containing language which, although not perhaps necessary to the decision, would support the holding that where the renting is incidental to the use of the premises as a family home, there is no violation of a single-family residence restriction. Typical of such cases are Kiernan v. Snowden, 123 N.Y.S. 2d 895; Baddour v. City of Long Beach, supra; Boston-Edison Protective Assn. v. Paulist Fathers, Inc., 306 Mich. 253, 10 N.W. 2d 847, 148 A.L.R. 364. And it has been many times stated in opinions that the use of premises as a residence with incidental renting of a room does not constitute the operation of a rooming house. See Carey v. Lauhoff, 301 Mich. 168, 3 N.W. 2d 67; Singelakis v. Davidson, 117 N.J.L. 332, 188 A. 443; Rosenblatt v. Levin, 127 N.J. Eq. 207, 12 Atl. 2d 627.

■ Webster's New International Dictionary, 2d Edition, 1935, has this definition of the word family: "a household, including parents, children, and servants, and, as the case may be, lodgers or boarders." That definition has been generally accepted by the courts and applied in varying contexts. See cases in 16 Words and Phrases, 189; and under "Family—Particular Persons Included," 35 C.J.S. 742.

■ A review of all of the many authorities leads to the definite conclusion that the exact question here presented has never been authoritatively decided, but the spirit and reasoning of the cases generally lead to the conclusion that the renting of a room or rooms in a private residence, which is merely incidental to its use as a family residence, does not violate a restriction limiting the use of the property to a single-family residence. There is no language in the restriction here under review which specifically forbids the renting of a room or rooms. To read that prohibition into the restriction would be violative of the settled rule that in construing covenants restricting the use of land all doubt should, as a general rule, be resolved in favor of the freer use of property and against restrictions. Baker v. Henderson, 137 Texas 266, 153 S.W. 2d 465; Couch v. Southern Methodist University, 10 S.W. 2d 973.

As indicated above, we do not have before us the question of whether any of the defendants were operating a rooming house as a business, and, therefore, do not write on that question. But on the precise question here presented we hold that the Court of Civil Appeals correctly held that the renting of a room in a single-family residence is not prohibited by the restrictive covenants here involved.

To hold otherwise would bring about unreasonable and unjust results. To illustrate: a husband and wife purchase a home in an area restricted to single-family residences, in which they rear a family; their children mature and depart to establish homes of their own; the parents continue to occupy the family home in which rooms formerly occupied by their children are now spare rooms. To adopt petitioners' construction of the restrictions in this case, the result would be that the parents would be precluded from renting even one room. To carry the illustration further, should either the mother or father die, is the survivor to be prohibited from taking in a roomer for the reason that the use of the premises is restricted to a single-family residence? We think not. A family home in which a spare room is incidentally rented is nonetheless a single-family residence.

Judgment of the Court of Civil Appeals affirmed.

Mr. Justice Griffin dissenting.

Opinion delivered December 31, 1958.

## ON REHEARING

PER CURIAM:

On original submission we assumed that a decision of a question of law was decisive of all of the consolidated cases. We remain of that opinion. We have concluded, however, that we should not have affirmed the judgment of the Court of Civil Appeals.

Evidence was introduced on the trial of the several consolidated cases. If that evidence satisfied the trial court that the several respondents were violating the property restrictions or were threatening to do so, it was its duty to enter a judgment containing proper injunction decrees. A judgment containing a separate injunction decree against each of the respondents was entered. As to each respondent the injunction runs against "renting a room or rooms upon their [his or her] premises, or any part thereof, and from otherwise using their [his or her] premises, or any part thereof, towit: [Here the property is described] for any purpose other than as and for a private residence for the members of a single family, including the bona fide servants, if any, engaged on the premises in the domestic service of such family, until April 15, 1973," and as long thereafter as the restrictions in the trust agreement may be extended in accordance with its terms and provisions.

None of the injunction decrees have been attacked by respondents on the ground that they are without support in the evidence. It must therefore be assumed that the evidence supports a finding that each of the respondents was violating, or threatening to violate, the restrictions as the trial court interpreted them. The points of error presented by the respondents in their brief in the Court of Civil Appeals, sustained by that Court, attacked the decrees as being erroneous, as a matter of law, in so far as they enjoined the various respondents from renting a room or rooms upon their premises. The argument was that the restrictions in the trust deed did not prohibit the renting of rooms, and that the trial court erred in entering decrees which assumed they did. It was on that law question that issue was joined on appeal.

On original submission we said that the spirit and reasoning of the many authorities on the general subject "lead to the conclusion that the renting of a room or rooms in a private residence, which is merely incidental to its use as a family resi-

dence, does not violate a restriction limiting the use of the property to a single-family residence." The first part of the several decrees which prohibits the several respondents from renting a room or rooms is therefore patently erroneous as a matter of law. Its language is broader and its legal effect is more restrictive than the law authorizes. The last part of the injunction decrees does no more than restate the terms of the property restrictions contained in the trust deed as they were interpreted in Pardo v. Southampton Civic Club, Texas Civ. App., 239 S.W. 2d 141, writ refused, and Rudy v. Southampton Civic Club, Texas Civ. App., 271 S.W. 2d 431, writ refused, n.r.e.

■ The Court of Civil Appeals correctly reversed the trial court's judgment because of the erroneous inclusion in each of the decrees of a prohibition against any and all renting of rooms. We have concluded, however, that judgment should not have been rendered for respondents. All of the consolidated cases were obviously tried on a wrong theory. Under such circumstances it is not only proper but better serves the interests of justice to remand for retrial. Rules 434 and 505, Texas Rules of Civil Procedure; London Terrace, Inc. v. McAlister, 142 Texas 608, 180 S.W. 2d 619, 620-621; Eaton v. R. B. George Investments, Inc., 152 Texas 523, 260 S.W. 2d 587, 591-592.

■ If and when the several cases are retried, whether on the same or other evidence, it will be the duty of the trial court to determine whether any of the several defendants are violating or threatening to violate the restrictions contained in the trust deed as we have interpreted them. Proper injunction decrees should then be entered only against those of the defendants who are.

The nature and extent of the use of his premises for purposes other than as a residence for the members of his family and his domestic servants will determine whether an injunction decree is to be. entered against a particular defendant. If the evidence establishes as a matter of law, or if the trial court finds as a fact on conflicting evidence or as a reasonable inference from the evidence, that a particular defendant is operating a rooming or boarding house on his premises as a business, or is using an establishment on his premises, separate and apart from his dwelling house, for renting as a source of financial gain, or is renting space to others in his dwelling house as a separate housekeeping unit, or is using his dwelling house primarily as a source of financial gain rather than as a residence for himself and his family and domestic servants, that activity should be enjoined. On the other hand, if the evidence establishes as a matter of law,

or if the trial court finds as a fact on conflicting evidence or as a reasonable inference from the evidence, that only the dwelling house on the premises of a particular defendant is being used as a place of residence and that it is being used primarily as a residence for the owner and his family and domestic servants, no injunction should issue against the incidental renting by the defendant of a room or rooms to others.

Petitioners' motion for rehearing is granted and our judgment entered herein on December 31, 1958 is set aside. In so far as the judgment of the Court of Civil Appeals reversed the judgment of the trial court the judgment is affirmed, but in so far as the judment of the Court of Civil Appeals rendered judgment for the respondents it is reversed and the cause is remanded to the trial court for trial in keeping with this opinion.

Costs in this court are divided equally between the parties.

The parties will have fifteen days from this date in which to file further motions for rehearing.

Justice Hamilton, not sitting.

Opinion delivered March 18, 1959.

MR. JUSTICE SMITH dissenting on motion for rehearing.

This is an injunction suit to enforce restrictive covenants. The petitioners originally filed seven suits and they were, by order of the trial court, consolidated and tried as one case. Such action in consolidating the cases was over the objection of the petitioners. The facts in each case were developed in the trial. It is undisputed that each respondent was renting or had rented a room or rooms to persons not members of their family.

Petitioners contend that the sole issue is whether the renting of rooms to roomers or boarders is in violation of the covenants contained in a certain trust instrument executed in 1922, affecting the lots situated in Southampton Place Addition to the City of Houston.

This case is controlled by the cases of Pardo v. Southampton Club. Texas Civ. App., 239 S.W. 2d 141, er. ref., and Rudy v. Southampton Civic Club, 271 S.W. 2d 431, er. ref., n.r.e. The majority approves the Pardo case. As long as the Pardo case

remains the law, the injunction granted by the court prohibiting the use of the land other than as a private residence for the members of a single family must stand.

The respondents recognized the controlling force and effect of the Pardo decision in their answer, wherein it is pleaded: "These defendants admit that the restrictions prohibit the use of the improvements on any one lot by more than one family, it being the provision in said restrictions that no duplex or apartment house should be permitted in the addition * * *." They denied, however, that the restrictions provide or should be construed to provide that the renting of a room in one's house or servant's quarters, where it is not occupied by a family, constituted a violation of the restriction against erection of duplexes and apartment houses. They further alleged in their answer that the purpose and proper construction of such restriction against the erection of duplexes and apartments was to prohibit more than one family living on one lot.

The petitioners contend that the same basic restrictions were interpreted in the Pardo and Rudy cases, and that the exact question presented here was decided contrary to the position taken by respondents. I agree with such contention. The majority approves the Pardo case, but seems to take the position that since the opinion does not undertake to define what is meant by the term "single-family residence," it does not follow that the Pardo case controls. The majority then proceeds to reject the Rudy case on the ground that the definition of the word "family" given in the court's charge was too restrictive. The definition given was that the word "family" includes "parents, children, and domestic servants." The majority says such definition is too restrictive for the reason that it would exclude a dependent mother or an invalid brother or sister.

The opinion in the Pardo case, after setting out the restrictions under consideration and giving an analysis of the authorities, contains this significant language:

"Under the above authorities it seems to be settled both in this state and in other jurisdictions that in order to carry out the intention of the developers of this addition, as evidenced by the restrictions above quoted the use of said Lot 10 of Block 45 of Southampton Place Addition must be limited to a single-family residence." The judgment of the trial court which was expressly approved by this Court specifically restrained the de-

fendants (same as the respondents here) from using the lot for any purpose other than as a single-family residence. The Rudy case judgment went a step further and restrained Rudy and his wife from using their lot for the purpose of housing any other than members of defendants' family. Of course, under the definition, such restraining order did not exclude domestic servants. The Rudy case was reviewed by this Court upon application for writ of error. Rudy's application presented points to the effect that the trial court erred in holding the restriction prevented the use and occupancy of garage apartments except by members of a single family or domestic servants; that the trial court erred in differentiating between servants and third persons with regard to use of garage apartments, and the court erred in injecting the word "family" into the restrictions, and in its definition of "family." Necessarily, by our action in refusing the writ of error, n.r.e., we rejected the position taken by Rudy. No controlling effect can be given to the court's failure to include a dependent mother or an invalid brother or sister. Such failure does not alter the undisputed facts in this case. The record shows that the respondents rented a room or rooms in some cases to one roomer and in others to as many as six roomers or boarders. Some were shown to be students attending Rice Institute, others were not Rice students, and in one instance at least it was not shown what the roomer was doing. I would sustain the petitioners' contention that as a matter of fact upon the evidence in the case, the trial court was justified in finding that each one of the defendants in this case—the defendant with one roomer and the defendant with six roomers—was violating the restriction. I would also, in view of the Pardo and Rudy cases, hold with petitioners' contention that as a matter of law the renting to one roomer, just as the renting to six, violated the restriction. Therefore, I would uphold the injunction granted by the trial court restraining and enjoining the respondents and each of them from renting a room or rooms upon their premises, or any part thereof, and from otherwise using their premises for any purpose other than as and for a private residence for the members of a single family, including the bona fide servants, if any, engaged on the premises in the domestic service of a family until April 15, 1973. (Note: The trust agreement contains a provision that by a certain vote of the total resident owners, the trust may be extended for another 50 years). The trial court in the Pardo and Rudy cases did not enjoin "multiple housing." They enjoin use of each lot for any purpose other than as a residence for members of a single family and its domestic servants, —so does the injunction in the present case. The question appealed in the instant case was: Did the renting of a room or

rooms violate the restriction? The Court of Civil Appeals apparently did not pass upon this question, but chose to decide a different question, i.e.: Did the renting of rooms to roomers constitute "multiple housing?"

I have reached the conclusion that we were in error in holding that this case must be decided just as if there were but one defendant and he were renting one spare room, even though the evidence shows that in the Couch case, Mr. Couch was renting to five men at the time of the trial and receiving a rent of $135.00 per month, and before the trial had rented to six men and collected rent of $150.00 per month. The writer also joined the majority in the conclusion that "We do not, therefore, have the question of whether the defendant who rents to six roomers is conducting a rooming house." After further study and reflection, I have concluded that the petitioners have at all times maintained that the renting of a room to one or six roomers is not incidental to the use of the premises as a family home. On the theory that the case must be decided just as if there were but one defendant and he was renting a spare room, we held in our original opinion that the evidence in all seven cases shows as a matter of law that the renting in each case was merely incidental and not in violation of the restrictions. The legal effect of our holding is to say that the renting of a room or rooms in a private residence, which is merely incidental to its use as a family residence, does not violate a restriction held by this Court in the Pardo case to limit the use of the property to a "single-family residence." Carrying it a little further, I think we held that as a matter of law there is no evidence that the use is not incidental in each of these cases.

I cannot now agree that we reached the correct conclusion. The seven cases were consolidated, but the evidence pertaining to each case was fully developed and compels the conclusion that in each case the evidence supports the judgment of the trial court that the act of each respondent in renting a room or rooms was in violation of the restrictions. Only the defensive issue of waiver was submitted to the jury. That issue was answered adversely to respondents. I agree with petitioners that as a matter of law a roomer (one or more) is not a part of a family. This conclusion is made more certain in the light of the Pardo case. The trial court rendered an errorless judgment. Even though the majority rejected the definition of "family" given in the Rudy case, that case still is authority for the proposition that the housing of persons not members of a single family is a violation of the restrictions to a single-family dwelling.

The only other issue requested was one of law and not one of fact. The respondents assigned only the point in the Court of Civil Appeals that the trial court erred in failing to submit to the jury the requested issue as to whether the restrictions promulgated for Southampton Addition prohibited residents thereof from having a roomer or roomers in their homes. Clearly, under the Pardo case, this was an issue of law.

The petitioners have at all times contended that one family and six roomers are more than just one family; that one family and one nonfamily boarder is more than one family, and constitutes a violation of the restrictions of the Southampton Addition as interpreted by this Court.

The preceding portion of this dissent was written before the majority decided to write on motion for rehearing. The Per Curiam opinion attempts to write around the Pardo and Rudy cases by advancing the idea that the case was tried upon the wrong theory. It seems to me that the case was tried properly under the only theory indicated in the two mentioned cases. By reversing and remanding for a new trial, per curiam does seem to admit that the majority was wrong when it said in its original petition: "We do not, therefore, have the question of whether the defendant who rents to six roomers is conducting a rooming house. This case must be decided just as if there were but one defendant and he were renting one spare room." To try this case upon a new theory will be to try it contrary to the law as announced by this Court. The opinion and judgment in the Pardo case upheld the same basic restrictions as we have in the present case. The restrictions, as construed in the Pardo case, prohibit use of the improvements on any one lot by more than one family. Now, both the original majority and the present majority, speaking through Per Curiam, advance the idea that "the spirit and reasoning of the cases generally lead to the conclusion that the renting of a room or rooms in a private residence, which is merely incidental to its use as a family residence, does not violate a restriction limiting the use of the property to a single-family residence." In the same paragraph, the original majority states that the exact question here presented has never been *"authoritatively"* decided. *(Emphasis added.)* Surely the majority does not include the Pardo and Rudy cases in this sweeping pronouncement. Apparently, at page two of the original, the majority contradicts the above quoted statement by accepting the construction given in the Pardo case wherein it was held that lots in the addition were *"restricted to the exclusive* use of a residence of a single family."

476

Restrictions such as we have here are not uncommon. Each purchaser bought his lot or lots with full knowledge of these restrictions. Several hundred people have invested thousands of dollars each. They relied upon such restrictions, and, above all, they relied upon the construction given the restrictions by the Supreme Court of Texas. The majority seems to realize that the decisions in the Pardo and Rudy cases are stare decisis, but apparently desire to soften up the rule by now advancing a theory that the injunction is too restrictive in that it would "exclude a dependent or an invalid brother or sister." I respectfully submit that the injunction does not exclude such persons from occupying the home. It is no more restrictive than the injunction in the Rudy case. See Rudy v. Southampton Civic Club, supra.

The Per Curiam leaves the trial court in a state of uncertainty as to the accurate standard and quality of evidence that could be introduced to bring about a different result in any of these seven cases. But, suppose the trial court decides that the majority means to say that if the evidence shows that only one roomer (Rice student or otherwise) has been added to the family in violation of Pardo and Rudy, that such evidence would be of sufficient probative force to warrant a conclusion that such relationship was merely incidental, then the court would proceed to dissolve the injunction. Such action, in my opinion, would not relieve Rudy from the penalties of contempt should he hereafter decide to rent to one roomer, and would not be in keeping with the law as announced in either the Pardo or Rudy cases.

The Per Curiam in remanding this case for a new trial as to all seven cases completely ignores the definition of a single-family residence as the same has been recognized by the Courts of this state in construing restrictions. The original majority has elected to quote a part of the definition of "family," reading as follows: "The body of persons who live in one house, and under one head or manager; a household, including parents, children, and servants, and as the case may be, lodgers or boarders; * * *." The majority omits that portion of the definition which immediately follows the above semicolon. The remainder of the definition reads: "specific for census purposes, any group of persons sharing a common dwelling and table, between and including the extremes of a single person living alone, and the inmates of a hotel or prison, poorhouse, asylum, or other institution." The word "family" has been construed by the courts not in connection with the taking of the National census every

ten years, but in connection with the construction of contracts such as we have here. The question being: What was the intention of the parties when the restrictions were adopted, and what did the parties deem the word 'family' to mean? I agree with the petitioners that the definitions of "family" used by the Texas Courts are:

"* * * a household, composed of parents and children, or other relatives, or domestics and servants; in short ,every collective body of persons living within the same curtilage, subsisting in common, directing their attention to a common object—the promotion of their mutual interest and social happiness." Howard v. Marshall, 48 Texas 471, 478 (1878), quoting Wilson v. Cochran, 31 Texas 680.

"A mere aggregation of individuals under one common roof or within the same curtilage, although 'devoting their attention to a common object, the promotion of their mutual interests and social happiness' — as the inmates of a boarding-house or persons employed in the capacity of servants, does not, of itself, constitute a family:

"We deduce from the authorities the following general rules to determine when the relation of family, as contemplated by law exists:

"1. It is one of social status, not of mere contract.

"2. Legal or moral obligation on the head to support the other members.

"3. Corresponding state of dependence on the part of the other members for this support. Roco v. Green, 50 Texas 483, 490 (1878), quoted in Stout v. Anthony, 254 S.W. 2d 879 (1952), error refused."

No Texas case has ever held that a lodger is a member of the family occupying the house where he lodges. The undisputed evidence shows that the roomers (whether one or six) were not members of respondents' families. The fact that persons live under the same roof does not make them members of a family. The addition of a roomer, as was done in these cases, takes the residence out of the class of a single-family residence. The renting to one or six roomers puts each respondent in these cases in the category of being an operator of a rooming or boarding house. Therefore, it is meaningless to say as the Per Curiam

does: "If the evidence establishes as a matter of law, or if the trial court finds as a fact on conflicting evidence, or as a reasonable inference from the evidence that a particular defendant is operating a rooming or boarding house on his premises as a business, * * * that activity should be enjoined." That is exactly the thing that the present injunction enjoins. The trial court proceeded on the right theory in construing the former decision to mean that the use of the lot or lots was limited to that of a residence for a single family. In spite of the decisions holding to the contrary, the Per Curiam opinion leaves it open for the trial court upon another trial to hold that the housing of a family, plus one or six persons not members thereof, does not violate the limitation to use by a single family. The injunction now in force is warranted by the evidence and the authorities. There is nothing in the injunction which would exclude a dependent mother or an invalid brother or sister. It seems to me that such persons would be a part of the family. Of course, if there should be a case in the future where the owner of the lot would want to collect rent from his dependent mother or an invalid brother or sister, then by all means the injunction should be modified so as to exclude such person from the injunction. I do not believe that the exclusion of such persons or other members of a family from the force of the injunction should be extended to include roomers and boarders not related to the respondents.

Conceivably, there could be other factual situations (not involved here) which would not be in violation of the restrictions. However, such matters can be considered when and if they occur. I am quite certain that the true meaning of the restrictions would never be construed to prohibit a single family from going to the aid of a friend or relative in need of shelter. Such a situation could not possibly be considered a business.

The fact that property rights will be materially affected if the majority view is followed, has convinced me that I was in error in joining the majority on original hearing.

The judgment of the Court of Civil Appeals should be reversed and that of the trial court affirmed.

Opinion delivered March 18, 1959.

Second motion for rehearing overruled April 22, 1959.