Ross Edward **HARRINGTON** et al.,
Appellants,

v.

**YOUNG MEN'S CHRISTIAN ASSOCIATION OF HOUSTON AND HARRIS COUNTY, Texas, Appellee.**

No. 15450.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

April 3, 1969.

Rehearing Denied May 1, 1969.

Ralph Abercia, Mabel Grey Howell, Houston, for appellants.

Sears & Burns, Will Sears, David F. Beale, Houston, for appellee.

PEDEN, Justice.

Summary judgment was granted in favor of Y.M.C.A. in its suit for a declaratory judgment in this restrictions case. The trial Court held that restrictive covenants affecting Post Oak Estates subdivision do not prohibit the Y.M.C.A. from erecting on its land in that subdivision and from thereafter using a building or buildings and its land to promote the religious, educational and physical development of boys, young men and families generally.

Subsequent to the entry of the summary judgment, appellants filed a motion asking the trial court to fix the amount of a supersedeas bond, and the amount was set at $250,000.00. Appellants have perfected their appeal from both the summary judgment and the order fixing supersedeas bond at $250,000.00.

Not before us on this appeal are appellee's allegations that the restrictive covenants in question have been waived and abandoned. These allegations were contained in an intervention which was adopted by the Y.M.C.A.; they were ordered severed from this cause by the trial court.

The Y.M.C.A. brought this suit against the appellants individually and as representatives of the class of all property owners in Post Oak Estates subdivision. On May 29, 1940 a map and dedication of the subdivision were filed for record and on June 3, 1940 an instrument relating to restrictions on the use of all its lots was also filed. The Y.M.C.A. subsequently purchased Lot 34 and the adjoining north half of Lot 32 in the subdivision and specially alleged in its pleadings in this cause that if such restrictions are valid, its lots are burdened with the "alleged" restrictive covenants for their duration. The subdivision consists of 47 lots, ranging in size from 3 acres to 4.46 acres, located on both sides of Augusta Drive, which extends from Westheimer Road on the south to Woodway (formerly Park Drive) on the north.

Appellants offered in evidence at the hearing on their motion to fix the amount of a supersedeas bond, plans of a proposed structure to be erected on the property by the Y.M.C.A., but these plans were not

before the trial court on the motion for summary judgment, so we will not consider them in that phase of this appeal.

The restrictions in question provide:

"(1) No business house, sanitarium, hospital, saloon, place of public amusement or entertainment, livery stable, factory, warehouse, apartment house, rooming house, boarding house, or place of business of any kind, shall be constructed, built, kept or maintained on any tract in the subdivision nor shall any house on the premises be used for any such purpose, but shall be used for residence purposes only. The mention of rooming house or boarding house does not prohibit the renting out of one room, but is intended only to prevent the running of a regular rooming or boarding house. (2) Not more than two homes can be constructed on any lot or tract according to the plat of said subdivision and for that purpose the lots shall be divided into substantially equal parts. The minimum value of any residence or main building that may be constructed on any tract in the subdivision shall be $4000.00 as to the tracts next to Park Drive in said subdivision and on all other tracts such value shall be not less than $3000.00; all such buildings shall face Augusta Drive except that the improvements on the tracts next to Westheimer Road may face Westheimer Road, and those improvements on Park Drive may face Park Drive; provided, however, that the improvements on said tracts facing Westheimer Road and Park Drive shall not be erected closer than 25 feet to the adjoining property line. (3) No garage apartments shall be constructed, except at the rear of the property. (4) No lot or tract of land in said addition shall be sold, conveyed, leased or demised to any person or persons other than of the Caucasian race. (5) No spirituous, vinous or malt liquors, or medicated bitters capable of producing intoxication shall ever be sold or offered for sale, on any tract in the subdivision, or any part thereof. (6) No residence shall be constructed on any tract in the subdivision closer to the nearest point on the front property line of said premises than thirty-five (35) feet, or closer to the nearest point on either side property line of same than twenty-five (25) feet. (7) These restrictions establishing building lines apply to galleries, porches, ports cocheres, steps, projections and every other permanent part of the improvements where there is a roof or other covering. (8) No nuisance, advertising sign, billboard, or other advertising device shall be erected, placed on or suffered to remain upon any tract in the subdivision except with the written consent of the undersigned. (9) All garages, barns, servants' houses, and other such buildings shall be constructed (except where built as a part of and connected to the main residence) in the rear of the residence. (10) No swine may be kept or raised on any tract in the subdivision. (11) No open or surface toilets may be maintained on any tract in the subdivision. Each purchaser of any tract in said Post Oak Estates, takes the title to the property subject to the above restrictions, covenants and conditions, and they shall apply to said tracts until January 1, 1975, provided that at any time within five (5) years before said date the then owners of a majority in number of front feet facing Augusta Drive may by written declaration signed, acknowledged, and recorded in the Deed Records, extend these restrictions, covenants and conditions for a period of not more than thirty (30) years additional. These parties owning and subdividing said tract of land, as well as each and every property owner in Post Oak Estates, may enforce the restrictions above set out."

Appellants' first four points of error refer to the summary judgment entered by the trial court:

1) "The trial court erred in granting a summary judgment in favor of the Y.M.C.A., and thus held, in effect, that

as a matter of law, Plaintiff was entitled to judgment in its favor, because the use contemplated by the Y.M.C.A. of its land in the subdivision was in violation of the restrictions of use of land in the Post Oak Estates Subdivision.

2) "The Trial court erred in granting a summary judgment by determining and declaring that Plaintiff may construct a building or buildings upon Lot 34 and the North one-half of Lot 32, POST OAK ESTATES, a subdivision in Houston, Harris County, Texas, and use the Subject property and the building or buildings thereon to promote the religious, educational and physical development of boys, young men and families generally, because such building or buildings and the use of the property is in violation of the restrictive covenants of said Subdivision, of which Y.M.C.A. had notice at the time of its purchase of the land in question, that the property 'shall be used for residence purposes only'.

3) "The trial court erred in failing to hold that the restrictive covenants of the Subdivision were binding upon Plaintiff and that the building or buildings contemplated by Y.M.C.A. for its use of land in said Subdivision would be in violation of said restrictions.

4) "The trial court erred in entering a summary judgment because the judgment erroneously purports to modify the restrictions so as to permit the construction of the building or buildings contemplated by Y.M.C.A., of its use of land, in the light of its holding that the Court was not 'DETERMINING or DECLARING whether the restrictive covenants' contained in the instrument of record in Volume 1157 at page 536 of the Deed Records of Harris County, Texas, 'have been abandoned and waived or are in full force and effect', so that the trial court did not purport to alter the restrictions to conform to any changed conditions."

The basic issue is: do the restrictions in question limit the use of the tracts in the subdivision to residence purposes only?

■ We hold that they do not. It is uncontroverted that the Y.M.C.A. is a non-profit organization. The restrictions prohibit the building or use of a business house and the use of a house for business purposes, but this prohibition would not be violated by the erection and use of a building or buildings for the purposes permitted by the judgment entered by the trial court.

■ It is the settled rule in Texas, as our Supreme Court pointed out in Southampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516 (1958), that in construing covenants restricting the use of land all doubt should, as a general rule, be resolved in favor of the freer use of property and against restrictions, citing Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465 (1941).

■ In construing the instrument in question we look to the parties' intention as shown by the instrument as a whole, considering that each part of it was intended to have meaning and must be given some effect. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617 (1954).

Applying these rules of construction to the restrictions in question, we observe that the first paragraph of the restrictions states that "any house on the premises" may not be used for any of the enumerated purposes but shall be used for residence purposes only. Clearly, it is thus provided that if a house has already been built or is later built on the premises its use is restricted to residential purposes only. "House," as defined in Merriam, Webster's Third New International Dictionary, is "a structure intended or used for human habitation; a building that serves as one's residence or domicile especially as contrasted with a place of business; a building containing living quarters for one or a few families * * *" Neither paragraph one of the restrictions nor any of

the others expressly limits the lots to residential use. The word "building", whose common and ordinarily understood meaning is broader than that of "house", was not used, and since the first paragraph of the restrictions does not specifically require that buildings other than houses be used for residential purposes, that paragraph does not forbid the erection and use of the improvements specified in the trial court's judgment. Southampton Civic Club v. Couch, supra; Hill v. Trigg, 286 S.W. 182 (Tex.Com.App.1926).

Further, we are unable to find that any useful purpose would be served by employment of the phrase "No business house, sanitarium, hospital, saloon, place of public amusement or entertainment, livery stable, factory, warehouse, apartment house, rooming house, boarding house or place of business of any kind, shall be constructed, built, kept or maintained on any tract in the subdivision" if the effect of the rest of the sentence "nor shall any house on the premises be used for any such purpose", was to restrict the use of the property to residence purposes only. The location in the sentence of such phrase after the express prohibitions serves to reinforce rather than limit them by forbidding any house built in the addition from being used for any such prohibited purpose.

In paragraph 2) of the restrictions, the use of the words "or main building" in the requirement that the "minimum value of any residence or main building that may be constructed * * *." shall be a certain amount demonstrates that there may be a non-residence (and non-business) type of building erected in the subdivision. The other provisions of Paragraph 2) are in terms which are broad enough ("buildings, improvements") to govern the location of and the direction that non-residential buildings shall face.

We conclude that the intention expressed in the instrument was to forbid certain specified uses being made of the property and to further require that any house built in the subdivision not be put to one

of the forbidden uses but be put to residence use only.

Appellants cite the case of Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943 (1958) as holding that restrictions like those in our case have been held to prohibit the erection and use of a church. The exhibits in our case show that the properties are adjacent to each other. However, the restrictions in the *Cowling* case are not before us, and it appears that there was not presented on appeal to the Texas Supreme Court in *Cowling* the issue of whether the restrictions limit the use of the lots to residential purposes; the issues presented were waiver, abandonment and change of conditions in the surrounding area. Further, the relief sought in that suit was to enjoin business or commercial use of the lots there involved, a use not sought by the plaintiffs in the instant case.

Appellants also cite Protestant Episcopal Church Council of the Diocese of Texas v. McKinney, 339 S.W.2d 400 (Eastland Tex.Civ.App.1960, writ ref.) as holding that restrictions substantially the same as those in the instant case prohibit the use of the property for any purpose except for residence purposes only. We will emphasize the words by which the restrictions in the two cases differ; we consider these differences to be crucial. In *McKinney,* the restrictions first name the specified businesses which are prohibited, then state: "nor shall any *building, or any lot or lots* in said addition be used for any such purpose, but shall be used for residence purposes only; * * *." In the instant case, as has been noted, the narrower word "house" is used instead of "building", and the use of the lots or tracts is not specifically restricted to residence purposes.

This Court held in Wald v. West Macgregor Protective Association, 332 S.W.2d 338 (Houston 1st Civ.App.1960, writ ref., n. r. e.), that restrictions very similar to the ones involved in the instant case prohibit the use of a house already on the property from being used as a fraternity house. We would apply the same rule in the instant

case, but neither a house nor use as a fraternity house is involved here.

Appellants' fifth point of error states that the trial court abused its discretion in fixing the amount of the supersedeas bond in this cause at $250,000.00 and thus sought to preclude defendants' right to appeal the judgment.

 We overrule this point. We consider that we are without authority to either review the trial court's fixing of the amount of the bond or to require that it be decreased. We lack authority to grant a writ of mandamus directing that the bond be fixed in a lesser amount. "The authority of the Court of Civil Appeals to issue writs of mandamus is limited to that given in Articles 1823 and 1824, V.A.T.S. They may only issue writs necessary to enforce their jurisdiction or to compel a district or county court to proceed to trial and judgment in a cause." Johnson v. Court of Civil Appeals, 162 Tex. 613, 350 S.W.2d 330 (1961). The filing of a supersedeas bond is appropriate in this case, and the jurisdiction of this Court is not threatened, so we may not issue a writ of mandamus.

We also lack authority to review the action of the trial court in fixing the amount of the supersedeas bond. The part of Rule 364, Texas Rules of Civil Procedure, which authorizes the fixing of the bond by the trial court in this case is Section (e): "Where the judgment is for other than money or property or foreclosure, the bond shall be in such amount to be fixed by the court below as will secure the plaintiff in judgment in any loss or damage occasioned by the delay on appeal." Although Section (g) provides that in cases under that section (judgment in favor of the State, a municipality, etc.) the "discretion of the trial court in fixing the amount of the bond shall be subject to review", no such provision is contained in Section (e). "It is a settled rule that the express mention or enumeration of one person, thing, consequence, or class is equivalent to an express exclusion of all others." State v. Mauritz-

Wells Co., 141 Tex. 634, 175 S.W.2d 238 (1943).

The same rule of law is applicable to demonstrate that we lack authority to fix the amount of the bond ourselves; Section (f) or Rule 364 authorizes the appellate court to permit the judgment in child custody cases to be superseded, but Section (e) contains no such provision. And while Rule 365 expressly provides that the sufficiency of a supersedeas bond is reviewable by an appellate court, which court may require additional bond or security, that rule does not authorize an appellate court to review the excessiveness of the bond or to require that its amount be diminished.

The judgment of the Trial Court is affirmed.