

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00283-CV

**JOHN W. COCKRELL AND CYNTHIA COCKRELL,**

                                                                                        **Appellants**

 **v.**

**TOM MATLOCK AND JUDY MATLOCK,**

                                                                                        **Appellees**

_____

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 06-003299-CV-272**

---

## MEMORANDUM OPINION

---

John W. Cockrell and Cynthia Cockrell (the Cockrells) appeal the trial court's granting of a permanent injunction in favor of Judy Matlock, individually and as independent executrix of the estate of Tom Matlock, deceased (Matlock). We will affirm the trial court's judgment as modified.

### Background

The Cockrells bought a home near Texas A&M University so their two sons would have a place to live while attending school there and so they would have a place

to stay when they visited. On May 12, 2006, the Cockrells purchased the property located at 8714 Bent Tree, College Station, Brazos County, Texas. The house has four bedrooms, two bathrooms, one kitchen, one living room, and one dining room. Mr. Cockrell testified that when they bought the house, he knew that his sons would occupy two of the bedrooms and that, for part of each year, he would be renting the two other bedrooms to someone other than a member of his family.

After the purchase, the Cockrells' sons began residing in the home on the property. The Cockrells themselves never resided in the house, but Mr. Cockrell visited regularly. He testified that he visited the property "on average probably once every six weeks." He said that in the year he had owned the property, he had visited at least ten times and that three of those times were for over a week. Mr. Cockrell also spent approximately $20,000 in improvements to the property and incurred the monthly expenses on the property, including a first and second mortgage payment totaling approximately $1,250, as well as utilities, natural gas, cable, phone, internet, and property taxes.

In July 2006, Chase Psensik and Adam Guy each rented a room in the home from Mr. Cockrell. Neither Psensik nor Guy is related to the Cockrells by blood, adoption, guardianship, or marriage. Psensik and Guy agreed to pay $325 and $375, respectively, in rent to Mr. Cockrell. They also each agreed to pay twenty-five percent of the home utilities, including electricity, gas, water, sewer, garbage, cable, and internet. When the lease agreements with Psensik and Guy expired, the Cockrells intended to rent the rooms to other non-related individuals during their ownership of the house.

The Cockrells' property is located within Phase IV of Emerald Forest, a residential subdivision in the City of College Station, Brazos County, Texas, according to a Plat recorded in the Deed Records of Brazos County, Texas. Before developing Phase IV of Emerald Forest, the owner and developer of the subdivision recorded in the Official Records of Brazos County, Texas, "Corrected" Deed Restrictions for Emerald Forest, Phase IV, College Station, Texas (Deed Restrictions). The Cockrells' property is thus subject to the Deed Restrictions, which contain the following restriction:

1.   LAND USE AND BUILDING TYPE

No lot shall be used for any purpose except for single family residential purposes. The term "residential purposes" as used herein, excludes hospitals, clinics, duplex houses, apartment houses, boarding houses, hotel and commercial and professional uses, whether from homes, residences or otherwise, and all such uses of the lots are expressly prohibited. No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling not to exceed two and one-half stories in height and a private garage for not more than three cars and permitted accessory structures.

Matlock owns the property at 8718 Bent Tree in College Station, Brazos County, Texas, which is also within Phase IV of Emerald Forest and subject to the Deed Restrictions. Matlock sued the Cockrells, seeking an injunction prohibiting the Cockrells from violating the single family use restriction by renting the property to unrelated individuals. The Cockrells generally denied the allegations and filed a counterclaim for a declaratory judgment that their use of the property was not in violation of the Deed Restrictions. After a bench trial, the trial court signed a judgment ordering that "[the Cockrells], their family members, agents, servants and employees are permanently enjoined from permitting any person not related to [the Cockrells] by

blood, adoption, guardianship, or marriage, (i.e. a member of single family) from residing in and on the Property by contractual rental agreement or otherwise" and awarding attorneys' fees to Matlock. The trial court also issued findings of fact and conclusions of law.

## Construction of the Deed Restriction

In their first and second issues, the Cockrells contend that the trial court erred by finding that they were in violation of the Deed Restrictions and by failing to strictly interpret the Deed Restrictions in favor of the free use of the land due to the ambiguity of the Deed Restrictions. More specifically, the Cockrells argue that, considering that the Deed Restrictions do not contain definitions of the terms "family" or "single family," the relevant deed restriction may be reasonably interpreted in various ways and their use of the property complies with all of these various interpretations.

The Deed Restrictions in this case are restrictive covenants concerning real property. *See* TEX. PROP. CODE ANN. § 202.001(4) (Vernon Supp. 2009). Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). As when interpreting any contract, the court's primary duty in construing a restrictive covenant is to determine the drafter's intent from the instrument's language. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987); *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 692 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). In determining the drafter's intent, we must examine the covenant as a whole in light of the circumstances present when the covenant was made. *Pilarcik*, 966 S.W.2d at 478.

Whether restrictive covenants are ambiguous is a question of law. *Id.* A covenant is unambiguous if, after appropriate rules of construction have been applied, the covenant can be given a definite or certain legal meaning. *Id.* In contrast, if, after appropriate rules of construction have been applied, a covenant is susceptible of more than one reasonable interpretation, the covenant is ambiguous. *Id.* Mere disagreement over a restrictive covenant's interpretation does not necessarily render the covenant ambiguous. *Gennedy*, 125 S.W.3d at 693.

Under the common law, covenants restricting the free use of land are not favored, but they will still be enforced when they are confined to a lawful purpose and clearly worded. *Wilmoth*, 734 S.W.2d at 657. All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it. *Id.* Seemingly to the contrary, however, section 202.003(a) of the Property Code states, "A restrictive covenant shall be liberally construed to give effect to its purposes and intent." TEX. PROP. CODE ANN. § 202.003(a) (Vernon 2007).

In *Gennedy*, the First Court of Appeals discussed the potential conflict in the common law and statutory law and the differences among the courts of appeals in resolving the potential conflict. *Gennedy*, 125 S.W.3d at 693-95. In this case, the Cockrells argue that there is no discernible conflict between the common law and section 202.003(a). They contend that in determining the intent of the framers of the restrictive covenant, a court must liberally construe the covenant's language, but if there is an ambiguity concerning the drafter's intent, the common-law strict-construction rule

applies. *See Munson v. Milton*, 948 S.W.2d 813, 816 (Tex. App.—San Antonio 1997, writ denied). Conversely, Matlock urges us to follow those courts of appeals that have held or implied that section 202.003(a)'s liberal-construction rule concerning residential covenants supersedes the common-law strict-construction rule. *See, e.g., Village of Pheasant Run Homeowners Ass'n v. Kastor*, 47 S.W.3d 747, 750-51 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Benard v. Humble*, 990 S.W.2d 929, 930-31 (Tex. App.—Beaumont 1999, pet. denied). However, we need not resolve this potential conflict in this case because, under either a liberal or a strict construction of the Deed Restrictions, we would reach the same conclusion.

## *Unified Development Ordinance's Definition of "Family"*

The Cockrells first propose that we interpret the term "single family" within the phrase "single family residential purposes" in the Deed Restrictions as it is defined by the Unified Development Ordinance of the City of College Station, Texas (the Ordinance). In other words, the Cockrells argue that the residents of the property constitute a "single family" because they meet the definition of "family" as defined by the Ordinance. The parties stipulated that the property is subject to the Ordinance and that the Ordinance defines "family" as one or more persons occupying a single dwelling unit, provided that unless all members are related by (1) blood, (2) adoption, (3) guardianship, (4) marriage, or (5) are part of a group home for disabled persons, no such family shall contain more than four persons. *See* COLLEGE STATION, TEX., UNIFIED DEV. ORDINANCE art. 11, § 11.2 (2009) (effective June 13, 2003). The Ordinance further defines "single-family" as a residential unit providing complete, independent living

facilities for one family including permanent provisions for living, sleeping, cooking, eating, and sanitation. *Id.* We will assume without deciding that the residents of the Cockrells' property comply with the Ordinance's definition of "family" and "single-family."

In seeking to determine a term's ordinary meaning in the construction of a restrictive covenant, it is certainly proper and frequently necessary for the court to consult other contemporary documents employing the phrase. "A definition contained in a contemporary legislative enactment is not necessarily conclusive, but it may very well be persuasive." *Gigowski v. Russell*, 718 S.W.2d 16, 18 (Tex. App.—Tyler 1986, writ ref'd n.r.e.). However, in this case, the Cockrells have not shown that the Ordinance is contemporary to the Deed Restrictions. As previously stated, the meaning of the words used in the restrictive covenant must be determined as of the date the covenant was written, and not as of some subsequent date. *Pilarcik*, 966 S.W.2d at 478; *Gigowski*, 718 S.W.2d at 18. The Deed Restrictions here were signed and recorded in May 1982, and the Ordinance became effective on June 13, 2003. Thus, the trial court did not err by refusing to apply the Ordinance's definition of "family" to the term "single family" within the phrase "single family residential purposes" in the Deed Restrictions.

*Incidental Renting of Rooms*

Citing *Southampton Civic Club v. Couch*, 159 Tex. 464, 322 S.W.2d 516 (1958), the Cockrells also argue that, even if the current residents of the property do not constitute a "family," the renting of two rooms of the property to two unrelated persons is

incidental to the property's use as a single-family residence and thus does not violate the relevant deed restriction.

In *Couch*, several people who owned homes in the Southampton Place Addition in Houston were renting or had rented one or more rooms in their respective residences to persons who were not members of their respective families. Most of the lodgers were students at Rice Institute. Each of the homes was subject to several restrictions, including the following: "No apartment house or duplex will be permitted in the Addition, the object of this provision being to prohibit multiple housing throughout the entire Addition." The court accepted and based its opinion on the construction of the restriction in *Pardo v. Southampton Civic Club*, 239 S.W.2d 141 (Tex. Civ. App.—Galveston 1951, writ ref'd), where the court held that the lots in the Addition were "restricted to the exclusive use of a residence of a single family." *Couch*, 322 S.W.2d at 517-18.

In determining whether the renting of a room or rooms in a private residence violated the single family use restriction, the court first noted that in *Rudy v. Southampton Civic Club*, 271 S.W.2d 431 (Tex. Civ. App.—Waco 1954, writ ref'd n.r.e.), involving the same restriction, the court approved the trial court's jury instruction that the word "family" includes "parents, children and domestic servants." But the *Couch* court then rejected this definition as "entirely too restrictive." The court recognized that such a restrictive definition would "exclude a dependent mother or an invalid brother or sister." Instead, the court noted a Webster's definition of the word "family": "a household, including parents, children, and servants, and, as the case may be, lodgers

or boarders." Based on this definition, the court concluded that "the renting of a room or rooms in a private residence, which is merely incidental to its use as a family residence, does not violate a restriction limiting the use of the property to a single-family residence." *Couch*, 322 S.W.2d at 518. In its opinion on rehearing, the court explained more fully:

> The nature and extent of the use of his premises for purposes other than as a residence for members of his family and his domestic servants will determine whether an injunction decree is to be entered against a particular defendant. If the evidence establishes as a matter of law, or if the trial court finds as a fact on conflicting evidence or as a reasonable inference from the evidence, that a particular defendant is operating a rooming or boarding house on his premises as a business, or is using an establishment on his premises, separate and apart from his dwelling house, for renting as a source of financial gain, or is renting space to others in his dwelling house as a separate house-keeping unit, or is using his dwelling house primarily as a source of financial gain rather than as a residence for himself and his family and domestic servants, that activity should be enjoined. On the other hand, if the evidence establishes as a matter of law, or if the trial court finds as a fact on conflicting evidence or as a reasonable inference from the evidence, that only the dwelling house on the premises of a particular defendant is being used as a place of residence and that it is being used primarily as a residence for the owner and his family and domestic servants, no injunction should issue against the incidental renting by the defendant of a room or rooms to others.

*Id.* at 520 (op. on reh'g).

Under *Couch*, the Cockrells are correct that the *incidental* renting of a room or rooms in their private family residence would not violate the relevant deed restriction limiting the use of the property to "single family residential purposes." However, it is clear that their renting of the two rooms in this case is not incidental to their use of the property as a single family residence.

When the owner and his family rent a room or rooms in the home in which they reside, the renting is incidental, and thus does not violate a single family use restriction, if the home is still being used primarily as a residence for the owner and his family. *See id.* If, however, the home is being used primarily for financial gain, even though the owner and his family reside there, the renting of a room or rooms in the home is no longer incidental. *See id.*

Mr. Cockrell testified that when they bought the property, he knew that his two sons would occupy two of the bedrooms in the house and that, for part of each year, he would be renting the two other bedrooms in the house to individuals who were not related to his family. The Cockrells themselves never intended to reside in the home, nor have they ever resided in the home. After owning the home for only about two months, Mr. Cockrell rented two of the rooms in the home to two individuals who were not related to his family. Mr. Cockrell received $700 in rent each month, which was over half of his monthly mortgage payment, as well as payment for half of the home utilities. The Cockrells seem to argue that because the amount of monthly rent did not equal or exceed their monthly mortgage payments, then they were not renting the property as a source of financial gain. But the amount of the rent does not alter the fact that it was a source of financial gain. *Compare Southampton Civic Club v. Foxworth*, 550 S.W.2d 152, 153-54 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), *with Tucker v. Soliz*, 483 S.W.2d 367, 368-69 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). Moreover, when the initial lease agreements expire, the Cockrells acknowledge that they intend to rent the two bedrooms to other non-related

individuals.  Thus, the Cockrells' renting of the two rooms was not incidental to their use of the property as a single family residence.

*Use Restriction vs. Structural Restriction*

Finally, citing *Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear*, 877 S.W.2d 550 (Tex. App.—Beaumont 1994, no writ), and *Permian Basin Centers for Mental Health & Mental Retardation v. Alsobrook*, 723 S.W.2d 774 (Tex. App.—El Paso 1986, writ ref'd n.r.e.), the Cockrells argue that the term "single family" refers to the architectural form of the structure that may be built, not the use that may be made of the structure.

In *Permian Basin Centers*, Permian Basin Centers for Mental Health and Mental Retardation leased a home "for use as a residential family home for six mentally retarded adults."  The property was located in a subdivision that made it subject to the following restrictive covenant:

> All lots in the tract shall be known and described as residential lots, except:
>
> Lots 7 through 20, inclusive in Block 1 of said Addition, which lots are hereby specifically designated as commercial lots and may be used either for residential purposes or for any of the following commercial and business purposes only:
>
> * * *
>
> No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family dwelling, not to exceed two stories in height, and a private garage for not more than two cars, together with outbuildings used in connection therewith, except that duplexes or single family dwellings may be erected upon the following lots only, in said addition, . . . .

Permian Basin argued that the term "single-family dwelling," as used in the restrictive covenant, referred only to the type of structure that could be built on the property and did not refer to the way in which the property could be used. The court agreed, reasoning that the paragraph in which the term "single-family dwelling" appeared dealt with the character of the structures that could be "erected, altered, placed or permitted to remain on any residential building plot." The court further noted that there was no mention in that or any other paragraph of the covenant seeking to impose a single-family occupancy requirement. Moreover, although there were no headings in the restrictive covenant, the paragraph in which "single-family dwelling" appeared dealt with only structural and architectural matters. The court thus held that the restrictive covenant limited the use of the property to residential purposes, and the term "single-family dwelling" limited the residential use to single-family structures. *Permian Basin Ctrs.*, 723 S.W.2d at 774-77.

Similarly, in *Kinnear*, Deep East Texas Regional Mental Health and Mental Retardation Services "proposed to build an architecturally correct structure wherein six female citizens of Texas with mental impairment would reside and would be supervised and carefully regulated by two staff members." The proposed home was to be built in the Bay Meadows Subdivision and thus subject to certain restrictive covenants. The relevant restriction stated:

> 1. All lots shall be known and described as lots for residential purposes only. Only one one-family residence may be erected, altered, placed or be permitted to remain on any lot. Said lots shall not be used for business purposes or [sic] any kind nor for any commercial, manufacturing or apartment house purposes.

Relying on the wording of the restriction, the court held that the proposed structure would not violate the restrictive covenants of the subdivision because the covenant restricts the architectural form of the structure and not the use to which the proposed residence is put. *Kinnear*, 877 S.W.2d at 553-54. The court acknowledged that a separate provision dealt with the use of the property, reading: "Said lots shall not be used for business purposes of any kind nor for any commercial, manufacturing or apartment house purposes." Furthermore, after noting *Permian Basin Centers*, the court stated, "[I]t is now the established law in our state that the term 'single family residence' refers to the architectural character and the architectural form of the structure that may be built, not the use which may be made of the structure." *Id.* at 554.

However, the language of the relevant restriction in this case is much different than that of *Permian Basin Centers* and *Kinnear*. Here, the restriction appears under the heading "LAND USE AND BUILDING TYPE" and thus deals with both architectural matters and uses of the land. Moreover, the restriction does not simply contain the statement, "No building shall be erected, altered, placed or permitted to remain on any lot other than one single family dwelling." In addition to that statement, the restriction states, "No lot shall be *used* for any purpose except for *single family* residential purposes." (Emphasis added.) For these reasons, the term "single family" within the phrase "single family residential purposes" refers to the use that may be made of the structure, not to the architectural form of the structure.

For these reasons, we overrule the Cockrells' first and second issues.

**Overbreadth of Injunction**

In their third issue, the Cockrells argue that the language of the injunction erroneously prevents them from renting the property to anyone outside of their family and is thus overly broad. The trial court's judgment specifically reads:

> The Court further finds that the Property may not be used for any purpose other than single family residential purposes and that Defendants should be enjoined from using said Property for any purpose other than single family residential purposes including, permitting any unrelated persons to reside in said Property through a rental agreement or otherwise. . . .

> . . . IT IS ORDERED that Defendants, their family members, agents, servants and employees are permanently enjoined from permitting any person not related to Defendants by blood, adoption, guardianship, or marriage, (i.e. a member of single family) from residing in and on the Property by contractual rental agreement or otherwise. . . .

Incidental renting does not violate the deed restriction in question. *See Couch*, 322 S.W.2d at 518. Matlock acknowledged as much when she testified, "The issue . . . is not renting the house. It's -- it's how many people are in that house particularly." Thus, in light of *Couch*, the language of the injunction conflicts with the supreme court's holding therein.

We modify the stated finding and ordered relief of the trial court's judgment stated above as follows:

> The Court further finds that the Property may not be used for any purpose other than one single family residence and that Defendants should be enjoined from using said Property for any purpose other than as a single family residence including, allowing residence by non-family members through commercial or contractual rental agreement that exceeds incidental lodging or boarding. . . .

. . . IT IS ORDERED that Defendants, their family members, agents, servants and employees while living on the property are permanently enjoined from permitting to reside on the Property, by commercial or contractual rental agreement, any non-family persons other than incidental boarders or lodgers. . . .

**Additional Unrelated Individual Residing on the Property**

In their fourth issue, the Cockrells argue that there is no evidence, or in the alternative, insufficient evidence to support the trial court's finding that, in addition to Psensik and Guy, who resided on the property pursuant to a lease agreement, the Cockrells permitted another unrelated individual to reside on the property. Assuming that the trial court correctly found that the Cockrells permitted another unrelated individual to reside on the property, there is no evidence that the individual was anything more than an incidental lodger. There is no evidence that she has a lease with the Cockrells or that she pays rent or any other bills or expenses related to the property. We need not reach this issue. *See* TEX. R. APP. P. 47.1.

**Attorney's Fees**

Finally, the Cockrells argue that if we conclude that they should have prevailed in this suit, then the trial court erred by awarding attorney's fees to Matlock under section 37.009 of the Civil Practice and Remedies Code because her pleadings do not support such an award. However, in their reply brief, the Cockrells concede Matlock's ability to collect attorney's fees under section 5.006 of the Property Code if we conclude that the trial court was correct in finding that she should prevail in this matter.

Section 5.006 of the Property Code states: "In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing

party who asserted the action reasonable attorney's fees in addition to the party's costs and claim." TEX. PROP. CODE ANN. § 5.006 (Vernon 2003). We have concluded that the trial court was correct in finding that the Cockrells violated the Deed Restrictions; thus, Matlock is a prevailing party in this suit. *See City of Houston v. Muse*, 788 S.W.2d 419, 423-24 (Tex. App.—Houston [1st Dist.] 1990, no writ). We overrule the Cockrells' fifth issue.

## Conclusion

We affirm the trial court's judgment as modified.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray dissents. A separate opinion will not issue.)
Affirmed as modified
Opinion delivered and filed August 12, 2009
[CV06]